Argued October 18, affirmed on plaintiff's appeal October 26, rehearing
denied November 27, 1917.

## ELLIOTT *v.* TILLAMOOK COUNTY.

(168 Pac. 77.)

**Counties—Bonds—Petition.**

1. Laws of 1913, page 170, Section 3, requiring petitions to issue
county road bonds to state the period the bonds shall run, is not sub-
stantially complied with by a petition for bonds "to run not to exceed
20 years."

**Counties—Findings of Court—Conclusiveness—Issuance of Bonds.**

2. A County Court's finding pursuant to Laws of 1913, page 170,
Section 4, that a petition to issue county road bonds substantially con-
formed to the requirements of Section 3 of said act is not conclusive.

**Counties—Bonds—Curative Act.**

3. Laws of 1913, page 174, Section 11, making a County Court's
declaration that a bond issue project carried at an election conclusive
as to the regularity of all prior proceedings, is invalid in so far as
it attempts to cure a jurisdictionally defective petition.

From Tillamook: GEORGE R. BAGLEY, Judge.

In Banc.    Statement by MR. JUSTICE MOORE.

This is a suit by Smith W. Elliott, a resident tax-
payer of Tillamook County, Oregon, against that *quasi*
municipality, A. M. Hare as county judge, and F. L.
Owens and H. V. Alley as county commissioners
thereof, to enjoin the issue and sale of county bonds,
the proceeds from which were intended to be used in
constructing permanent roads within the county. The
complaint details the proceedings employed to secure
an issue of the bonds, and alleges the petition therefor
was insufficient because it did not set forth or specify
the length of time the bonds should run, as required
by Section 3 of Chapter 103, Gen. Laws Or. 1913; and
that the bonds were ordered to be sold at a discount,
in violation of Section 15 of that act. A demurrer to
the complaint for that it did not state facts sufficient
to constitute a cause of suit was overruled as to the

first ground so stated, but sustained as to the second. Thereupon the plaintiff declined further to plead, and a decree being rendered enjoining the sale of the bonds below par, both parties appeal.

BONDS ENJOINED.    REHEARING DENIED.

For plaintiff-appellant there was a brief and an oral argument by *Mr. H. T. Botts.*

For defendants and appellants there was a brief with oral arguments by *Mr. T. H. Goyne* and *Mr. Charles W. Fulton.*

MR. JUSTICE MOORE delivered the opinion of the court.

Section 10 of Article XI of the organic law of the state was amended by a vote of the electors November 8, 1910, pursuant to an exercise of the initiative power, and that clause now reads:

"No county shall create any debts or liabilities which shall singly or in the aggregate exceed the sum of five thousand dollars, except to suppress insurrection or repel invasion, or to build permanent roads within the county, but debts for permanent roads shall be incurred only on approval of a majority of those voting on the question": Gen. Laws Or. 1911, p. 11.

In order to execute the authority thus specified Chapter 103, Gen. Laws Or. 1913, was enacted. Section 1 thereof provides that bonds may be issued for the purpose mentioned. Section 2 declares that an exercise of such authority shall be invoked by petition. Section 3, as far as material herein, reads:

"The petition mentioned in Section 2 of this act shall set out and specify the amount of bonds proposed to be issued, the length of time they shall run, and the maximum rate of interest they shall bear. * * The pe-

tition shall be in substance the following form''—setting forth the pattern.

The act to which reference has been made was attempted to be changed by Chapter 12, Gen. Laws Or. 1917.    The proposed alteration is entitled:

"An act to amend Chapter 103, General Laws of Oregon for 1913, by inserting therein an additional section.''

Omitting the enacting and emergency clauses Chapter 12 is as follows:

"Section 1.    That Chapter 103, General Laws of Oregon for 1913, be and the same is hereby amended by inserting therein an additional section which shall be numbered Section 16 (a) to read as follows: Sec. 16 (a).    After the issuance of bonds has been authorized by an election held in accordance with the provisions of this act the County Court may, in its discretion, in lieu of bonds redeemable only at the time stated in the notice, issue bonds, reserving the right to redeem them or any portion thereof serially each year, and make such reservation in the order providing for their issuance.    When bonds are issued with such reservation, the redemption fund provided for in this act may be used each year, as it is collected, for the redemption of such proportion or percentage of such bonds as will redeem all of them at the end of the time fixed in the prior proceedings for the maturity of such bonds, instead of being kept and deposited or loaned as provided in this act until the final maturity of the bonds.''

The validity of Chapter 12 may well be questioned, since it appears to be violative of the provisions of Section 22, Article IV, of the Constitution of Oregon, which declares:

"No act shall ever be revised or amended by mere reference to its title, but the act revised or section amended shall be set forth and published at full length.''

Chapter 12, Gen. Laws Or. 1917, will in this instance be treated as in full force and effect.

The petition referred to in the complaint was subscribed by more than the required number of registered voters, each of whom noted opposite his name the precinct in which he resided and his postoffice address. Omitting the signatures the petition is as follows:

"To the Honorable County Court of Tillamook County, Oregon:

"We, the undersigned registered voters, respectively petition that you call a special election for the purpose of submitting to the voters of this county the question of issuing bonds, to provide for the construction of permanent roads in this county, to the amount of four hundred and twelve thousand dollars ($412,000), to run not to exceed twenty years each, provided, however, the county may reserve the right to redeem same or any portion thereof serially each year. The aforesaid bonds shall bear interest at not to exceed five (5) per cent per annum.

"Name.          Precinct.          P. O. Address."

This petition was filed with the county clerk May 4, 1917, and a week thereafter the County Court, complying with the requirements of Section 4 of said Chapter 103, examined the petition, found that it substantially conformed to the requirements of Section 3 of that act, and was in all other required particulars correct. Thereupon it made an order directing that a special election should be called and held in the county June 4, 1917, for the purpose specified in the petition, which order further stated the facts required by Section 4 of the act and directed that the bonds proposed to be issued were

"to run for a term of twelve years each and to bear interest at the rate of five per centum per annum, said bonds to be redeemed one-tenth annually beginning

at the end of the third year, no more than $200,000.00 of bonds to be issued in any one year.''

The order also prescribed the form of notice to be given as specified in Section 6 of the act, and directed the county clerk to have the notices printed and to post them 20 days prior to the election. This order was strictly obeyed.

The election was held in the several precincts of the county at the time designated, where and when were cast 1,499 votes in favor of the measure and 687 against it. The judges and clerks of the election made due returns thereof, which being properly canvassed and reported the County Court on June 12, 1917, made and caused to be entered in its journal an order declaring that a majority of the voters voting at such election had voted in favor of issuing such bonds, which order further stated all the facts required to be detailed by Section 11 of the act.

The County Court duly advertised a sale of the bonds, receiving several bids therefor, and accepted as the most favorable that of Messrs. Keeler Brothers, of Denver, Colorado, who offered to pay the face value and accrued interest of the bonds and a premium of $5, less, however, $6,900, as the cost of printing such evidences of indebtedness and as attorney's fees in ascertaining and determining the validity of such securities. Thereupon this suit was instituted and terminated as hereinbefore stated.

An examination of the petition as set forth above will show an attempt to comply with the requirements of Section 3 of Chapter 103, and also to conform to an exercise of the discretion which is conferred upon the County Court by Section 16 (a) of Chapter 12. If that attempted enactment is valid, the power conferred can be employed without any request therefor or limi-

tation thereof by the registered voters as to the payment of the bonds serially. The statement of such matters in the petition and notices was superfluous, but probably would not have impaired the efficacy of the proceedings if the petition was adequate in other particulars: *Clark* v. *Hood River County,* 73 Or. 336 (143 Pac. 897).

1, 2. It will be remembered that Section 3 of Chapter 103 demands that the petition inaugurating the proceedings,

"shall set out and specify (1) the amount of bonds proposed to be issued, (2) the length of time they shall run, and (3) the maximum rate of interest they shall bear."

The statement in the petition that the bonds were "to run not to exceed twenty years each, provided, however, the county may reserve the right to redeem same or any portion thereof serially each year,"

would, if this quoted clause were controlling, permit the bonds to run 20 years as the maximum and two as the minimum, assuming that the phrase "serially each year" means a succession of payments which would necessarily embrace a period of at least two years. Such a variance would not be a compliance with the second requirement of Section 3 of Chapter 103. Section 4 of that chapter provides that if the County Court from an examination of the petition is satisfied that it "substantially conforms" to the requirements of Section 3 of the act, an order shall be made directing a special election to be called and held in the county for the purpose specified. It will be kept in mind that the County Court made a finding to the effect that from an inspection of the petition it "substantially conformed" to such requirements. A clause of Section 3 of the act under consideration, in referring

to the means prescribed for inaugurating proceedings to be employed to obtain an issue of county bonds, reads: "The petition shall be in substance the following form"—setting forth a proposed model. It is believed that the phrase "substantially conforms" to the requirements of Section 3, as used in Section 4 of the act, relates only to any form of petition other than recommended that might be adopted by the registered voters, and not to either of the three jurisdictional prerequisites specified in the section last mentioned; and that any finding made by a County Court that the petition "substantially conforms" to the requirements of Section 3, when either of the matters essential to confer power to hear and determine the question does not strictly comply with the mandate of that section, is not conclusive. An examination of the petition does not lead to the conclusion that it "substantially conforms" to the requirements of Section 3 of Chapter 103.

It is insisted by defendant's counsel that eliminating from the petition all parts thereof relating to Section 16 (a) of Chapter 12, Gen. Laws Or. 1917, thereby leaving the phrase limiting the term of the bonds "to run not to exceed twenty years each," the irregularity respecting the time should not vitiate the proceedings. The case relied upon as sustaining the legal principle thus maintained is that of *City of Oswego* v. *Davis,* 97 Kan. 371, 154 Pac. 1124, where was construed a statute of Kansas which provided, *inter alia,* as follows:

"Whenever the city council of any such city shall desire to procure authority for the issuance of bonds under the terms of this act, they shall pass an ordinance directing the calling of an election for the submission of the question to the electors thereof. Notice for such election shall state the amount of bonds proposed to be issued."

In an ordinance enacted pursuant to such authorization it was provided:

"That an election is hereby directed to be held at the usual place of voting in the several wards of said city, within thirty days from the taking effect of this ordinance, at which the following proposition shall be submitted to the electors of said city, to wit: 'Shall the mayor and councilmen of the City of Oswego, Kansas, issue the bonds of said city in a sum not exceeding thirty thousand dollars.' * * *"

In a *mandamus* proceeding to compel the auditor of state to register bonds issued pursuant to such ordinance by the City of Oswego for the extension and improvement of its municipal water plant, it was held that the slight departure from the precision of statement required by the statute touching the amount of bonds to be put forth did not render the proposed issue illegal nor preclude their registration. The conclusion thus reached is supported by decisions from other courts, as will be seen by an examination of the cases there cited. Adverse decisions, however, are also noted, an inspection of which in our opinion presents the better reason. Thus in *Hillsborough County* v. *Henderson,* 45 Fla. 356 (33 South. 997), it was ruled that counties desiring to issue bonds should strictly comply with the provisions of a statute regulating such issue, and that a resolution attempting to authorize the issuance of county bonds, which determination stipulated that the bonds should bear not more than 4 per cent interest per annum without fixing a definite rate, was not a compliance with the statutory requirement. Based upon such conclusion the proposed issue of the bonds was perpetually enjoined.

In *State ex rel.* v. *Saline County Court,* 45 Mo. 242, pursuant to a statute authorizing a County Court to subscribe to stock of a railway company, if a majority

of the taxpayers voted therefor, "specifying the amount," it was determined that an order of a County Court submitting the question to the electors and calling upon them to vote for or against an amount not exceeding $70,000, but leaving the precise amount uncertain, was not a compliance with the terms of the enactment.

So, too, in *Stern* v. *City of Fargo,* 18 N. D. 289 (122 N. W. 403, 26 L. R. A. (N. S.) 665), in construing a statute of North Dakota which authorized the issuance of bonds and required notices of election therefor should specify the purpose for which the bonds were to be issued and the amount thereof, it was ruled that a resolution of a city council providing for the issuance of $100,000 in bonds, or such part thereof as might be required, and notices of similar import, did not state the amount of bonds to be voted for, and that without such statement the question of the issuance of bonds was not fairly presented to the electors, who were entitled to know definitely what was proposed in the way of increasing the indebtedness of the city. To the same effect see, also, *Smith* v. *Mayor and Council of Dublin,* 113 Ga. 833 (39 S. E. 327); *Crooke* v. *Board of Commissioners,* 36 Ind. 320; *Cincinnati etc. R. Co.* v. *Wells,* 39 Ind. 539; *Mercer County* v. *Pittsburgh & Erie R. Co.,* 27 Pa. St. 389.

While it would probably be presumed that each registered voter carefully read a petition which was being circulated for any purpose before he subscribed his name to it, experience teaches that but a very small percentage of persons do so, relying upon what is told them as being requested by the application. The legislative assembly evidently recognizing this trait of character enacted in Chapter 103, *supra,* that a petition praying for the calling of an election to issue

bonds for the construction and maintenance of permanent roads in the county should, *inter alia,* set forth and specify the length of time the bonds should run, and having done so, the requirement is a condition precedent to an exercise of the right which is not complied with by adopting a sliding scale ranging from two to twenty years. Whatever motive may have prompted the enactment of Section 3 of Chapter 103 is unimportant, for the legislature having commanded that the petition inaugurating the proceedings should contain the requirement last above mentioned, the language so employed is mandatory and must be obeyed in order to render valid an exercise of the power invoked. A text-writer, commenting upon this legal principle, observes:

"The provisions of the constitution or statutes conferring authority to issue the securities in question in respect to their purpose, denomination, maturity, time of payment and rate of interest if mandatory should be literally followed": Abbott, Pub. Securities, § 139.

To the same effect see Sections 91 and 164 of that work. This author further remarks:

"The initial steps prescribed by law are regarded as jurisdictional and a failure to comply with them renders their subsequent action with its attendant results voidable if not entirely void": Id., § 140.

The petition did not "substantially conform" to the requirements of Section 3 of Chapter 103, *supra,* and was insufficient to confer jurisdiction of the subject matter.

3. Nor was this defect cured by a clause of Section 11 of Chapter 103 which declares that if at an election called and held pursuant to the provisions of the act,

"a majority of the voters voting at such an election shall vote in favor of issuing such bonds, the County

Court shall enter an order in its journal declaring that fact, and that order shall be absolutely conclusive as to the regularity of all the proceedings in reference to the matter.''

The legislature in prescribing rules governing the trial of civil causes may enact that certain resulting evidentiary facts related to and having a tendency to establish the existence of some preceding fact can properly declare that the subsequent fact affords *prima facie* evidence of the antecedent fact, and such enactment will be upheld, notwithstanding the burden of proof is thereby shifted to the adverse party, since he is not concluded thereby, but may introduce evidence tending to rebut the disputable presumption thereby created: *State* v. *Thomas,* 144 Ala. 77 (40 South. 271, 113 Am. St. Rep. 17, 6 Ann. Cas. 744, and notes, 2 L. R. A. (N. S.) 1011). A statute declaring that a tax deed affords conclusive evidence of the regularity of the proceedings relative to the assessment and taxation of property is invalid, for the enactment is an attempt to deprive a person of his property without due process of law: *Strode* v. *Washer,* 17 Or. 50 (16 Pac. 926); *Harris* v. *Harsch,* 29 Or. 562 (46 Pac. 141); *Bradford* v. *Durham,* 54 Or. 1 (101 Pac. 897, 135 Am. St. Rep. 807); *Tracy* v. *Reed,* 38 Fed. 69 (2 L. R. A. 773, and notes, 13 Sawy. 622).

A deed is designed to evidence a transfer of the title to property. If a legislative fiat declaring a tax deed afforded conclusive evidence of the regularity of the tax proceedings were to obtain, no relief could be granted, however capriciously or negligently the taxing officers may have undertaken to perform their duties; and, hence, an owner would necessarily be deprived of his property without having a day in court, which right is guaranteed him before he can thus be divested.

While a statute may change the *onus probandi* and declare that certain facts afford *prima facie* evidence of other related facts, the legislature under such circumstances as are here detailed is powerless to make the resulting fact conclusive evidence of the preceding fact, upon which it is necessarily predicated.

The conclusion thus reached renders it unnecessary to consider the question of the contemplated sale of the bonds for the offer accepted therefor.

The issue of bonds is therefore perpetually enjoined.

Bonds Enjoined.   Rehearing Denied.