Argued and submitted January 11,
alternative writ dismissed January 15, 1982

# STATE ex rel EMERALD PEOPLE'S UTILITY DISTRICT,
*Plaintiff-Relator,*

*v.*

# JOSEPH et al,
*Defendants.*

## (SC 28313)

640 P2d 1011

Jennifer Friesen, Eugene, argued the cause for plaintiff-relator. With her on the brief were Kulongoski, Heid, Durham & Drummonds, Eugene.

Charles F. Hinkle, of Stoel, Rives, Boley, Fraser and Wyse, Portland, argued the cause and filed the briefs for defendants.

Before Denecke, Chief Justice, and Lent, Linde, Peterson, and Tanzer, Justices.

DENECKE, C. J.

Peterson, J., filed a specially concurring opinion.

## DENECKE, C. J.

In response to a petition by the plaintiff, Emerald People's Utility District, filed on December 29, 1981, we issued an alternative writ of mandamus ordering the defendant, the Chief Judge of the Court of Appeals, to vacate the order of the Court of Appeals denying plaintiff's motion to expedite the briefing schedule in two appeals and to enter an order allowing such motion or show cause why he had not done so. Briefs were filed and oral arguments were held on January 11, 1982.

The appeals underlying this mandamus proceeding were from judgments entered in favor of the plaintiff in two actions challenging the validity of a revenue bond election held by the plaintiff. One of these was a special proceeding authorized by ORS 261.605-261.635. ORS 261.615 provides that an appeal from such a special proceeding "must be heard and determined within three months from the time of taking such appeal."[1]

After the Court of Appeals denied the motion to expedite briefs, the plaintiff moved for reconsideration of its motion and the Court of Appeals denied that motion. Its action was memorialized in a letter by legal counsel of the Court of Appeals to counsel for the parties which stated, in part:

> "The Court of Appeals expressly wants you to know that it has been the practice of the Court of Appeals to deny such motions in the absence of a showing of exceptional circumstances over and above a legislative direction as to how the judiciary should conduct its business. * * *."

The principal and most important issue raised is whether the legislative command to the judiciary that a proceeding such as the one here involved be heard and determined within three months can be ignored by the judiciary because the command violates the Oregon Constitution.

Art IV, § 1 of the Oregon Constitution provides:

---

[1] The plaintiff recognized ORS 261.615 did not expedite the other proceedings but asked that the briefs be accelerated in that case also because it involved the same issues as the special proceeding.

"(1) The legislative power of the state, except for the initiative and referendum powers reserved to the people, is vested in a Legislative Assembly, consisting of a Senate and a House of Representatives."

Art VII, § 1 (as amended) provides, in part:

"The judicial power of the state shall be vested in one supreme court and in such other courts as may from time to time be created by law. * * *."

Art III, § 1 provides:

"The powers of the Government shall be divided into three seperate [sic] departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

The defendant has cited a number of cases from other jurisdictions holding that a legislative command to the judiciary that cases, or certain types of cases, be decided within a certain time is invalid. These jurisdictions have constitutional provisions regarding the separation of powers similar to those of Oregon. An example is *Schario v. State*, 105 Ohio St 535, 138 NE 63 (1922). An Ohio statute provided that appeals from convictions for violation of a specified statute "shall be heard by such reviewing court within not more than thirty court days after filing such petition in error." 138 NE at 64. In this particular case the appeal was from a city court to a "court of common pleas."

The Supreme Court of Ohio held the statute void, stating:

"* * * True, the general subject-matter of procedure by the parties to the cause, prescribing the manner of invoking the jurisdiction, the pleadings, and the time within which the jurisdiction shall be invoked, in short, the adjective law of a case, has always been regarded within the proper province of legislative action, yet the legislative branch of the government is without constitutional authority to limit the judicial branch of the government in respect to when it shall hear or determine any cause of action within its lawful jurisdiction.

"Whether or not justice is administered without 'denial or delay' is a matter for which the judges are answerable to the people, and not to the General Assembly of Ohio. * * *." 138 NE at 64.

Other examples cited are *State ex rel Kostas v. Johnson,* 224 Ind 540, 69 NE2d 592 (1946); and *Atchison, T. & S. F. Ry. Co. v. Long,* 122 Okla 86, 251 P 486 (1926).

This court has not been so adamant. In *U'Ren v. Bagley,* 118 Or 77, 81, 245 P 1074, 46 ALR 1173 (1926), we stated:

"'* * * The success which our form of government has achieved in the past may be attributed largely to the fact that each coordinate branch has recognized the fundamental and salutary principle that there must be no encroachment upon the other. It remains, however, for the judiciary to say when there has been a transgression in this respect. This authority vested in the courts is one which should be exercised with extreme caution and only when there has been a plain and palpable abridgment of the powers of one department by another. To determine with precision the boundary between the respective coordinate branches of our government has ever been a difficult thing for the courts to do. * * *.'"

In *Ramstead v. Morgan,* 219 Or 383, 399, 347 P2d 594, 77 ALR2d 481 (1959), we stated:

"Unquestionably, the legislature may act authoritatively with respect to some matters which affect the judicial process. *E.g., Bergeron, Petitioner,* 220 Mass 472, 107 NE 1007 (1915). The limits of legislative authority are reached, however, when legislative action unduly burdens or unduly interferes with the judicial department in the exercise of its judicial functions. * * *."

We followed the principle stated in *Ramstead* in *Sadler v. Oregon State Bar,* 275 Or 279, 285, 550 P2d 1218 (1976), and *State ex rel Acocella v. Allen,* 288 Or 175, 179, 604 P2d 391 (1979). In both those decisions we upheld legislation affecting judicial power because we concluded the legislation did not "unduly burden or unduly interfere with the judiciary in the exercise of its judicial functions." 288 Or at 181.

Prior to the articulation of this principle we held the legislature could validly require courts to act within a specified time. A statute was enacted providing that a court must determine a motion for a new trial within 55 days or it was deemed denied. We upheld the statute. *Nendel v. Meyers,* 162 Or 661, 664, 94 P2d 680 (1939):

"No doubt this statute was enacted to expedite court business. It is common knowledge that the practice once prevailed among some judges to keep motions for new trial under advisement for an unreasonable length of time. The legislature, with good reason, has seen fit to stop such practice. In so doing, the legislature has not encroached upon the power of the judiciary. It has only, in the interest of the proper administration of justice, put a reasonable limitation upon the exercise of the power of courts in granting new trials."

See, also, Armstrong, *Oregon Survey, Constitutional Law,* 56 Or L Rev 387, 391 (1977).

██ ██   Turning to the statute here invoked, we conclude that the legislative command to the Court of Appeals to hear and determine the case within three months from the time of taking the appeal does not on its face necessarily "unduly burden or unduly interfere with the judiciary in the exercise of its judicial functions." "Unduly," in this context, means that it is impossible in the individual case, within the statutory deadline, for counsel to complete proper briefing or other documentation adequate for a responsible judicial decision, and for the court to arrive at a reasoned decision consistent with the judicial responsibility imposed by Art VII. We do not infer in the abstract that the three-month limitation does or does not unduly interfere with the court's conscientiously and competently performing its judicial function under Art VII, § 1 (amended).

██   Defendant also argues that legislation to expedite some cases over others may create "privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens," Oregon Constitution, Art I, § 20, or deny some persons the "equal protection of the laws," United States Constitution, Fourteenth Amendment. ORS 261.615 was enacted to expedite a final decision on the validity of bonds sought to be sold by public utility districts, which are governmental entities, not private persons or citizens. The statute does not violate these constitutional provisions. *Cf. State v. Clark,* 291 Or 231, 630 P2d 810 (1981), and *State v. Edmonson,* 291 Or 251, 630 P2d 822 (1981).

■ For these reasons the Court of Appeals was in error in disregarding the legislative command in the court's consideration of plaintiff's motion to expedite.

We will not, however, issue a peremptory writ ordering the Court of Appeals to expedite the briefing schedule. The notice of appeal in these cases was filed October 22, 1981. The three-month period will expire on Monday, January 25, 1982, six judicial days from the date of this opinion. The appellant's brief, is not due until February 7, 1982. (Apparently, settling of the transcript caused a delay.) We know it is possible to have a case briefed, heard and decided by an appellate court in the time remaining between now and January 25; however, we conclude that to require such action at this late stage might well interfere unduly with the court's well-considered and responsible decision of the cases involved here.[2]

Alternative writ dismissed.

Costs and attorney fees to neither party.

**PETERSON, J.,** specially concurring.

When I came to work on the morning of January 14, 1982, a draft opinion in this case was on my desk. The case had been argued three days earlier, on January 11, 1982. We had received the defendants' brief on January 4, 1982, and on the day of the argument we received the answering brief of the plaintiff and the defendants' reply brief. Accompanying the draft opinion was a memorandum from its author concluding with this clause: "Goal: To have opinion issued before close of Thursday [January 14, 1982]."

At the conference of the court following oral argument, I had stated my concerns relative to the constitutionality of the statute involved in this case, but I had by no means thoroughly studied the applicable law.

The fact that the opinion was on my desk compelled me to do one of three things. First, I could join in the opinion without further research or further real consideration of the issues. Second, I could do research. Or

---

[2] The issue of the legal effect of failure to decide an appeal within the statutory period is not before us, and we express no opinion on it.

third, I could express tentative disagreement with the opinion and ask for time to prepare a separate opinion. I was unwilling to join in the opinion, and after rereading it, I told its author that I would probably write separately.

I have other opinions to write. Some people might say that other cases that have been assigned to me for opinion have as much or more importance or significance than this one. In any event, I put those cases aside, and began to work on this case, which was largely completed on the following day, January 15, 1982.[1] I will return to this aspect of the case later in this opinion.

The statute involved in this case requires that the appeal must be "* * * heard and determined [by the Court of Appeals] within three months from the time of taking such appeal." The general issue is whether the statute is unconstitutional under the separation of powers doctrine, Or Const. Art III, § 1, and Art VII, § 1. The specific question is whether a statute which requires the hearing and decision of a case within three months of the time of taking an appeal "* * * unduly burdens or unduly interferes with the judicial department in the exercise of its judicial functions." *Ramstead v. Morgan,* 219 Or 383, 399, 347 P2d 594, 601 (1959). *Accord, Sadler v. Oregon State Bar,* 275 Or 279, 550 P2d 1218 (1976); *State ex rel Bushman v. Vandenberg,* 203 Or 326, 276 P2d 432, 280 P2d 344 (1955).

The chronology in this case is as follows:

| | |
|---|---|
| January 19, 1981 | Complaint filed in trial court |
| February 17, 1981 | Election |
| August 6, 7, 1981 | Emerald People's Utility District (Emerald) filed motions for summary judgment |
| September 24, 1981 | Trial court granted summary judgment motions |
| September 25, 1981 | Entry of judgment in trial court |
| October 22, 1981 | Notice of appeal filed |

---

[1] As my secretary typed this opinion I was rushing to complete a rewrite of one opinion and to complete a third opinion.

| | |
|---|---|
| November 2, 1981 | Emerald filed motion for accelerated hearing, briefing and decision |
| November 27, 1981 | Court of Appeals denied motion |
| December 1, 1981 | Emerald filed motion for reconsideration |
| December 4, 1981 | Court of Appeals denied motion for reconsideration |
| December 9, 1981 | Transcript deemed settled (ORS 19.078(4) |
| December 17, 1981 | Emerald filed petition for alternative writ |
| December 29, 1981 | Alternative writ issued |
| January 4, 1982 | Defendants' opening brief filed |
| January 11, 1982 | Answering brief filed. Reply brief filed. Court heard oral argument. |

The legislature has imposed, by statute, procedures applicable to the appeal of cases (including the cases in the Court of Appeals) as follows:

Transcript should be filed within 30 days after the filing of notice of appeal. ORS 19.078(1).

Within 15 days after the transcript is filed, any party may move to correct the transcript. ORS 19.078(3).

After the court acts upon the motion to correct the transcript, the trial court shall enter an order settling the transcript. In the absence of a motion to correct or add to the transcript, the transcript is deemed automatically settled 15 days after it is filed. ORS 19.078(4).

The normal appeal procedures permit 30 days after filing the notice of appeal for preparation of the transcript, and up to 30 days thereafter for settlement of the transcript.[2] The transcript in this case was settled on December

---

[2] In practice, the time can be longer, because the statute, ORS 19.078(4) does not require that the trial judge set the hearing on objections to the transcript within 15 days after the objections to the transcript are filed.

9, 1981, 48 days after the notice of appeal was filed, and three months from October 22, 1981, would end on January 25, 1982.[3] In this case, then, from the time the transcript was deemed settled until the time that the case must be "heard and determined" under ORS 261.615 would be between six and seven weeks.

The fact that it is *possible* for the appeal to be "heard and determined" within three months is by no means dispositive of the constitutionality of ORS 261.615. In fact, the possibility of hearing and decision within such a period is, to my way of thinking, largely irrelevant in considering whether the statute is constitutional.

The principle of separation of powers is well established. It exists under the constitution of the United States and under the constitution of each of the 50 states. The principle prohibits the legislature not only from exercising judicial functions, but also from unduly burdening or interfering with the judicial department in its exercise of judicial functions.[4] The majority make reference to this rule on page 361 of its opinion.

The majority conclude that the "* * * legislative command to the Court of Appeals to hear and determine the case within three months from the time of taking the appeal does not on its face necessarily 'unduly burden or unduly interfere with the judiciary in the exercise of its judicial functions.' * * *," largely because it is possible for the case to be heard and determined within three months. The majority apparently rely largely upon *Nendel v. Meyers,* 162 Or 661, 94 P2d 680 (1939). I will discuss that case below.

I am persuaded that, even though the Court of Appeals could *possibly* hear and determine the appeal in this case within the statutorily prescribed time, the intrusion by the legislative branch into affairs which are peculiarly the responsibility of the judicial department violates

---

[3] To calculate the period of "three months," see ORS 174.120.

[4] *Sadler v. Oregon State Bar,* 275 Or 279, 287, 550 P2d 1218, 1222-223 (1976); *Ramstead v. Morgan,* 219 Or 383, 399, 347 P2d 594, 601 (1959); *State ex rel Bushman v. Vandenberg,* 203 Or 326, 276 P2d 432, 280 P2d 344 (1955). See discussion in H. Rottschaefer, American Constitutional Law 52 (1939).

the separation of powers clauses of the Oregon Constitution. The Court of Appeals has had outstanding success in its handling of one of the heaviest caseloads-per-judge of any intermediate appellate court in the United States.[5] It controls the time the cases shall be set for hearing, the manner of hearing, and the manner of disposition of cases coming to it. I believe that legislative intrusion into this uniquely judicial function is prohibited by the Oregon Constitution.

---

[5] The statutes are largely silent upon the procedures to be followed in the appellate courts of Oregon. The Supreme Court and Court of Appeals have promulgated rules which provide, in part, as follows:

"The appellant's brief shall be served and filed within 60 days after the transcript is settled or deemed settled under ORS 19.078(4). Rule 7.45

The respondent's brief shall be served and filed within 60 days after the filing of the appellant's brief. Rule 7.45.

The appellant's reply brief must be served and filed within 30 days after the filing of the respondent's brief. Rule 7.45."

The monthly statistical reports issued by the Court of Appeals and Supreme Court reveal the following time intervals:

| | Court of Appeals | |
| --- | --- | --- |
| 1980 | Criminal | Other |
| Time lapse | | |
| Filing to at issue | 136 days | 154 days |
| At issue to argument | 37 days | 37 days |
| Argument to decision | 22 days | 52 days |
| Period ending 11-30-1981 | | |
| Filing to at issue | 128 days | 155 days |
| At issue to argument | 29 days | 43 days |
| Argument to decision | 52 days | 75 days |

The mean yearly rate of increase in appeals in Oregon between 1971 and 1978 was 18 percent. No state has had a higher annual increase. In 1978, the filings per judge on the Court of Appeals in Oregon were 311, fourth in the nation among states having intermediate appellate courts. In cases decided, the Oregon Court of Appeals ranked third. Marvell and Kuykendall, *Appellate Courts—Facts and Figures* 9 et seq., Spring 1980, State Court Journal. The Summer 1980 issue of the State Court Journal, at page 9 et seq, reveals that the Oregon Court of Appeals, during the period described in the article, (1) had the shortest period between court judgment and submission of any intermediate appellate court, (2) had the shortest elapsed time between the time when the case was "at issue" and oral argument of any intermediate appellate court, and (3) had the shortest time between oral argument and decision of any intermediate appellate court.

I have found no case from any other state reaching the conclusion that the majority reaches in this case.[6] In fact, virtually every court which has considered this problem holds that such legislative action is prohibited. The appendix to this opinion lists most of the courts which have considered this problem. Without exception, they have reached a contrary conclusion.

Of course, on the issue involved in this case, this court is not bound by the decisions of the courts of any other state. Indeed, on this question, this court is not bound by the Supreme Court of the United States, for the construction of the Oregon Constitution is the responsibility of Oregon courts, not federal courts. Even so, as any reader of our reports knows, we often refer to the decisions of other courts for guidance and direction, and I, for one, believe that the decisions of other courts which have considered the identical issue should be looked to.

More to the point, however, if we have an Oregon precedent which has decided the identical issue now presented, we must follow that precedent unless we now decide to overrule it. The majority's principal reliance is upon the case of *Nendel v. Meyers, supra.* That case involved the application of a statute which provided that a trial court must determine a motion for a new trial within 55 days after entry of judgment, and that if the motion was not "heard and determined within said time, the said motion shall conclusively be taken and deemed as denied."[7] The court held that an order setting aside a judgment more than 55 days after the entry of judgment was "null and void," because the trial court had no jurisdiction over the matter. On the constitutional issue, the court held:

> "* * * It is only by virtue of the statute that a party litigant had the right to move for a new trial. Certainly it is within the province of the legislature to prescribe the procedure for the hearing and determination of such motions. * * *"

---

[6] There are, however, cases which reject the claim that speedy trial statutes in criminal cases violate the separation of powers doctrine. They turn upon the constitutional guarantee of a speedy trial. *See, e.g., State v. Pachay,* 65 Ohio St 2d 218, 416 NE2d 589, 591-592 (1980), and *State v. Warren,* 224 Kan 454, 580 P2d 1336, 1339 (1978). *Contra, United States v. Brainer,* 515 F Supp 627 (DC Md 1981).

[7] ORCP 64F is still to that effect.

The provision in the statute in *Nendel* provided that the motion would be deemed denied 55 days after the entry of judgment. The effect of that provision is similar to the provision in ORS 19.078(4), providing that the transcript is deemed settled if no objections are filed within 15 days after the transcript is filed. The purpose of such statutes is to prevent a losing litigant from indefinitely postponing the ability of the winning party to obtain the benefits of a victory.

The legislature can give, and the legislature can take away. That is the basis for the decision in *Nendel v. Meyers, supra.* But the legislature cannot take away a power that it did not give. *State ex rel Oregon State Bar v. Lenske,* 243 Or 477, 492-493, 405 P2d 510, 407 P2d 250 (1966). Perhaps the legislature could pass a statute providing that no appeal would exist in cases such as the case at bar.[8] But having provided for an appeal, the disposition of the case by the judicial department is largely a matter for the judicial department, once the procedural steps provided for by the legislature have been met.

I am sensitive to and agree with the statement that because courts have the last word as to when there has been a transgression upon their domain, the power should be exercised with extreme caution and only when there has been a plain and palpable abridgement of the powers of one department by another. *U'Ren v. Bagley,* 118 Or 77, 81, 245 P 1074, 46 ALR 1173 (1926). I disclaim any "knee-jerk" reaction to the statute in this case and aim to suppress judicial arrogance. But the doctrine of the separation of powers is more than a theoretical, philosophical concept. It is a practical, workaday principle. Although each of the three departments do not exist in watertight compartments, a line must be drawn to separate judicial functions from legislative functions. I would draw that line in favor of the decision of the Court of Appeals.[9]

I concede that the Court of Appeals was created by the legislature; it could be abolished by the legislature. But having established the Court of Appeals, the legislature cannot unduly interfere with purely judicial functions.

---

[8] *See Klamath Falls v. Winters,* 289 Or 757, 762, 619 P2d 217 (1980).

[9] *See* A. Vanderbilt, *The Doctrine of the Separation of Powers* 50-51 (1963).

"* * * [T]here is a third realm of judicial activity, neither substantive nor adjective law, a realm of 'proceedings which are so vital to the efficient functioning of a court as to be beyond legislative power.' This is the area of minimum functional integrity of the courts, 'what is essential to the existence, dignity and functions of the court as a constitutional tribunal and from the very fact that it is a court.' Any statute which moves so far into this realm of judicial affairs as to dictate to a judge how he shall judge or how he shall comport himself in judging or which seeks to surround the act of judging with hampering conditions clearly offends the constitutional scheme of the separation of powers and will be held invalid." L. Levin & A. Amsterdam, *Legislative Control Over Judicial Rulemaking: A Problem in Constitutional Revision,* 107 U Pa L Rev 1, 31-32 (1958). (Citations omitted.)

The institutional independence of the judicial branches has been preserved as the doctrine of separation of powers and has consistently caused courts to declare void legislation which insisted on judicial action with a set period of time.

"No one will deny that the legislative arm of the government has the power to alter and regulate the procedure in both law and equity matters, but for it to attempt to compel the courts to give a hearing to a particular litigant at a particular time, to the absolute exclusion of others who may have an equal claim upon its attention, strikes a blow at the very foundation of constitutional government. The right to control its order of business and to so conduct the same that the rights of all litigants may properly be safeguarded has always been recognized as inherent in courts, and to strip them of that authority would necessarily render them so impotent and useless as to leave little excuse for their existence and place in the hands of the legislative branch of the state, power and control never contemplated by the Constitution." *Atchison, Topeka & Santa Fe Railway Company v. Long,* 122 Okla 86, 251 P 486, 489 (1926).

I concede that it is *possible* for the Court of Appeals to decide this case within three months. Considering its outstanding record in the disposition of cases that come before it, perhaps it could even be said that the Court of Appeals could decide this case within three months without substantial difficulty. But, as I have set aside other important work to work on this case, so the consideration

of the cases in the Court of Appeals will require them to set aside other important cases. Normally, courts decide how and when cases should be heard and determined. This is historically true. Permitting the legislature to tell us when and how to hear and determine cases will impermissibly affect judicial functions—the manner in which cases are prepared, argued, considered and determined.

Considering all of the aspects of the problem, although the question is a close one, I would follow the lead of other courts that have considered the issue, and hold that the statute is unconstitutional. For as this opinion may reflect, opinions spurred by a sense of urgency, with adrenalin flowing, the banner of advocacy waving, and the opportunity for detached consideration lacking, often result in passionate statements of position reflective of advocacy more than reason.

## APPENDIX

*State ex rel Kostas v. Johnson,* 224 Ind 540, 69 NE2d 592, 168 ALR 1118 (1946). (Statute provided that if judge (in trials on questions of fact) fails to determine, within 90 days, any issue of law or fact taken under advisement, the submission of the issue will be withdrawn and the judge will be disqualifed); *Resolute Ins. Co. v. Seventh Jud. Dist. Ct. of Okl. Co., Okl.,* 336 F Supp 497 (WD Okla 1971) (Statutory provision required judge to act within 30 days on motion to set aside order of forfeiture of bail); *Sands v. Albert Pike Motor Hotel,* 245 Ark 755, 434 SW2d 288 (1968) (Statute required affirmance of Worker's Comp order in Circuit Court within 60 days, or order deemed affirmed); *In re Estate of Barker,* 24 Ill App 3d 959, 321 NE2d 709 (1974); *Siskoy v. Walsh,* 22 Wis 2d 127, 125 NW2d 574 (1963) (Statute required that court hear motion within 20 days); *State v. Merialdo,* 70 Nev 322, 268 P2d 922 (1954) (Statute requiring judges to file affidavit of "no cases over 90 days" as condition of getting paycheck); *United States v. Brainer,* 515 F Supp 627 (DC Md 1981); *Schario v. State,* 105 Oh St 535, 138 NE 63 (1922) (Statute required that petition in error must be heard by reviewing court within 30 days of the filing of the petition); *Atchison, T & S. F. Ry Co. v. Long,* 122 Okla 86, 251 P 486 (1926) (Statute provided that court shall try certain cases within 10 days

after answer); *Holliman v. State,* 175 Ga 232, 165 SE 11 (1932) (Statute imposed time limit in which Supreme Court could act on petition for certiorari); *Riglander v. Star Co.,* 98 App Div 101, 90 NYS 772, 794 (1904), aff'd 181 NY 531, 73 NE 1131 (1905) (Declaring unconstitutional a statute requiring court to set certain cases for trial on certain day, to the preference of other cases). See annotation in 168 ALR 1125.