PACIFIC POWER & LIGHT
COMPANY et al,
*Appellants,*
*v.*
EMERALD PEOPLE'S UTILITY DISTRICT et al,
*Respondents,*
(16-81-00555)

CARSON,
*Appellant,*
*v.*
EMERALD PEOPLE'S UTILITY DISTRICT et al,
*Respondents.*
(16-81-02216; CA A22550)
646 P2d 1360

Charles F. Hinkle, Portland, argued the cause for appellants. With him on the briefs was Stoel, Rives, Boley, Fraser and Wyse, Portland.

Henry H. Drummonds and Jennifer Friesen, Eugene, argued the cause for respondents. With them on the brief was Kulongoski, Heid, Durham & Drummonds, Eugene.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

This is an appeal from judgments of dismissal after summary judgments were granted for defendants in these two consolidated cases: *Pacific Power & Light Company v. Emerald People's Utility District* (the *Pacific* case), and *Carson v. Emerald People's Utility District* (the *Carson* case). Plaintiffs in both cases challenge the validity of a revenue-bond election held by Emerald People's Utility District (EPUD) on February 17, 1981, on the grounds that: the election notice did not contain an exact statement of the amount and term of the proposed bonds, contrary to statutory requirements and Supreme Court decisions; and the notice contained a statement of an illegal purpose for the use of the bond proceeds.

The *Pacific* case was an action for declaratory and injunctive relief, and was commenced before the election. When those plaintiffs' request to enjoin the election was denied, they filed an amended complaint, after the election, seeking both a declaration that the election was invalid and an injunction to prevent defendants from selling the bonds authorized by the election.

The *Carson* case was a special proceeding brought under ORS 261.605 to 261.635. It was filed after the election and sought the same relief as the amended complaint in the *Pacific* case. The two cases were consolidated by order of the court on stipulation of the parties.

In August, 1981, defendants[1] moved for, and were granted, summary judgment in both cases, and both cases were dismissed.

### FACTS

Plaintiffs in the *Pacific* case are Pacific Power & Light Company (PPL), a privately owned electric utility company, and William Wrightson, a registered voter and taxpayer who resides within the boundaries of EPUD. Plaintiff in the *Carson* case, Lawrence Carson, is a registered voter and taxpayer residing within EPUD boundaries.

---

[1] Donald Penfold, the Lane County elections officer, was a defendant in the *Pacific* case, because the original complaint in that case sought to enjoin the holding of the election. After the election was held, he made no further appearance in the case and remains only a nominal party to the litigation.

Defendant EPUD is a people's utility district (PUD) organized in 1978, pursuant to ORS chapter 261, for the primary purpose of providing and distributing electrical energy to consumers within its territory. The individual defendants, other than defendant Penfold, were, at the time these actions were commenced, members of EPUD's board of directors. EPUD's territory includes portions of rural Lane County, excluding Eugene and certain smaller municipalities. EPUD owns no electrical or generation facilities; electricity is presently distributed to consumers within its boundaries by PPL.

On December 17, 1980, the EPUD board of directors adopted Resolution No. 80-11. In the preamble to that resolution, the board stated:

"* * * [T]he District desires to acquire (by condemnation or otherwise) or construct a utility system, including but not limited to, distribution facilities, generation facilities (including a program for the conservation of energy), transmission facilities, and all other works necessary for the operation of a complete operating utility system; * * *."

The operative portion of the resolution then went on, in Section II, to

"* * * call an election to be held * * * on the 17th day of February, 1981, * * * for the purpose of submitting to the qualified legal voters of such District the question of authorizing the issuance of revenue bonds as may be appropriate in the future according to the provisions of Chapter 261 and Chapter 255, Oregon Revised Statutes, payable solely from unobligated District revenues, in a sum not to exceed $72,500,000 to mature serially over a period not to exceed 40 years from the issue date."

Section III of the resolution then set out the purpose of the bonds:

"The purpose of such Electric Revenue Bonds, if authorized, will be to provide funds for the acquisition (including. acquisition by condemnation), construction, installation, and equipping of an electric utility system and necessary extensions and betterments thereto, which may include any or all of, but shall not be limited to, the following: electric utility distribution facilities; electric transmission facilities; electric generation facilities (including a program for the conservation of energy); the

cost of such acquisition, construction, installation, and equipping; the costs of the initial operations of the District; and the provision of adequate cash reserves for operations, all to the extent authorized by the laws of the State of Oregon."

The "Bond Election Notice" attached to the resolution stated:

"* * * There will be submitted to the qualified voters [of EPUD] the question of contracting a Revenue Bond indebtedness, payable solely from District revenues, in a sum not to exceed $72,500,000 to mature serially over a period not to exceed 40 years from the issue date * * *."

The notice went on to state the purpose of the bonds in the same language that appears in the resolution.

Before EPUD called the bond election, it obtained, in accordance with the requirement of ORS 261.355(5), an engineer's certificate, in the form of a "Final Engineering and Feasibility Report," that its revenues would be sufficient to make the annual principal and interest payments on the bonds. The report recommended that EPUD "schedule an election to determine if the voters will authorize a $72,500,000 bond issue for the acquisition of properties necessary to the operation of their utility district." It went on to recommend that EPUD allocate $31,000,000 of the bond issue for the acquisition of 40 percent of PPL's North Umpqua project. That report apparently provided the basis for the statement of the amount and purpose of the proposed bond issue set out in Resolution No. 80-11 and the accompanying "Bond Election Notice."

On August 7, 1981, EPUD's president, Richard Eymann, sent a letter to PPL, which read in its entirety:

"This letter serves as the notice required by ORS 543.610 that the Emerald People's Utility District will take over and thereafter maintain and operate a portion of the hydroelectric project operated by Pacific Power & Light on the North Umpqua River in Douglas County, Oregon on or after August 7, 1983 upon payment of the fair value of the project as defined in ORS 543.610(1) and ORS 543.010(2)."

## JURISDICTION

■     Defendants argue that ORS 261.615 governs this appeal and requires us to render our decision within three months from when the appeal was filed on October 22, 1981; because we did not render our decision within those three months, it is contended that we are now without jurisdiction.

The parties raise, but we need not decide (1) whether either, neither or both consolidated cases are subject to ORS 261.615;[2] (2) whether the time for decision in ORS 261.615 is jurisdictional; or (3) whether ORS 261.615 is constitutionally defective in light of *Logan v. Zimmerman Brush Co.*, 455 US 422, 102 S Ct 1148, 71 L Ed 2d 265 (1982).[3] *State ex rel Emerald PUD v. Joseph*, 292 Or 357, 640 P2d 1011 (1982), was a mandamus proceeding in which EPUD sought a writ directing this court to expedite the briefing schedule in these cases, which we had previously declined to do. The Supreme Court held that the legislative command embodied in ORS 261.615 did "not on its face necessarily 'unduly burden or unduly interfere with the judiciary in the exercise of its judicial functions' " (292 Or at 362) in violation of the provisions of the Oregon Constitution mandating the separation of powers (Art IV, § 1; Art III, § 1). The court went on to say:

> "* * * 'Unduly,' in this context, means that it is impossible in the individual case, within the statutory deadline, for counsel to complete proper briefing or other documentation adequate for a responsible judicial decision, and for the court to arrive at a reasoned decision consistent with the judicial responsibility imposed by Art VII. We do not infer in the abstract that the three-month limitation does or does not unduly interfere with the court's conscientiously and competently performing its judicial function under Art VII, § 1 (amended)." 292 Or at 362.

---

[2] *But see State ex rel Emerald PUD v. Joseph*, 292 Or 357, 359, 640 P2d 1011 (1982); the court presumed that only one of the proceedings was subject to ORS 261.615.

[3] *Logan* was decided after *State ex rel Emerald PUD v. Joseph, supra*, n 2. The United States Supreme Court found unconstitutional an Illinois statute that required a state commission to hold a hearing within 120 days of the filing of an employment discrimination charge. The Court based its decision on due process grounds, but six Justices also concluded that the statute denied equal protection.

We interpret the Supreme Court's opinion to mean that the question whether there is an undue burden on the judiciary must be determined in each case and that to impose the statutory mandate in these cases *would* impose an undue burden. The court, therefore, declined to issue a peremptory writ, noting that appellant's brief was not due in this court until after the three-month period would have expired. The court concluded by saying:

"\* \* \* We know it is possible to have a case briefed, heard and decided by an appellate court in the time remaining between now and January 25; *however,* we conclude that to require such action at this late stage *might well interfere unduly* with the court's well-considered and responsible decision of the cases involved here. [Footnote omitted.]" (Emphasis supplied.) 292 Or at 363.

By its interpretation of the statute as applied to these cases, the Supreme Court has told us to expedite our determination of them, without regard to the three-month statutory mandate. Accordingly, we proceed to the merits.

## ELECTION NOTICE

Plaintiffs argue that PUD special elections to authorize revenue bonds are governed by both ORS 255.085(2) and 261.375, pursuant to ORS 261.060, which provides:

"Except as otherwise specifically provided in this chapter, every district election shall be conducted in accordance with ORS 255.005 to 255.035, 255.055 to 255.095 and 255.215 to 255.355."

ORS 255.085(2) provides:

"(2) A notice of election called to approve the issuance of bonds shall include:

"(a) The purpose for which the bonds are to be used;

"(b) The amount and the term of the bonds;

"(c) The kind of bonds proposed to be issued; and

"(d) If the bond election is authorized by ORS 450.900, the additional notice requirements in ORS 450.905."

ORS 261.375 provides:

"(1) Subject to ORS 261.355(6), before any district issues general obligation or revenue bonds, other than general obligation refunding, revenue refunding or advance refunding bonds, the question of whether the bonds shall

be issued shall be submitted to the qualified voters of the district, either at any general, state or county election or at a special election called for that purpose by the board of the district to be held on a date specified in ORS 255.345.

"(2) At the election the notice and ballots shall contain a statement of the amount of bonds to be voted on and the purpose for which the bonds are to be used. If a majority of those voting on the question vote 'yes,' the board of directors is authorized to issue bonds of the character and in the amount designated by the election ballot."

Plaintiffs contend that ORS 261.375 does not "otherwise specifically provide" and that the election notice had to, but did not, comply with ORS 255.085(2) as to statements of the bonds' term and amount.[4] Regardless of which statute governs the notice contents, we conclude that the notice complied with both statutes.

The questioned language is "not to exceed," which modified the statements of both the amount and the term of the proposed bonds. Plaintiffs argue that those words render the election notice so indefinite as to mislead the voters and violate statutory requirements. They rely on two early cases decided under statutes that required that election notices for county road bonds "shall *particularly specify* the amount of the bonds proposed to be issued, the length of time they shall run * * *," (emphasis supplied) *Hansen v. Malheur County,* 160 Or 579, 86 P2d 964 (1939) (applying what is now codified as ORS 370.086(1)[5]); or that petitions

---

[4] ORS 261.375 does not require any statement of term.

[5] The statute, as pertinent in *Hansen,* then provided:

"Whenever a special election shall be ordered as provided in this act the county court shall cause printed notices thereof, signed by the county clerk, to be posted in like manner as notices of a general election are now posted, which notices shall particularly specify the amount of bonds proposed to be issued, the length of time they shall run, and the maximum rate of interest they shall bear, the road or roads to be improved, and the amount to be expended on each." Or Code 1930, § 44-2006.

ORS 370.086(1) provides:

"(1) The notice provided in ORS 370.082 and 370.084 shall particularly specify the amount of bonds proposed to be issued, the length of time they shall run, and the maximum rate of interest they shall bear, the road to be improved and the amount to be expended on each road."

for submitting road-bond issues to voters "shall *set out and specify* (1) the amount of bonds proposed to be issued, (2) the length of time they shall run * * *." (Emphasis supplied.) *Elliott v. Tillamook County,* 86 Or 427, 168 P 77 (1917) (applying what is now codified as ORS 370.040).[6]

Those cases are not controlling here, because the statutes involved there contained more stringent requirements of specificity. Those cases and statutes expressly required *specificity* as to amount and term of bonds to be issued. The statutes here require at most *statements*[7] of amount and, depending on which statute governs, of term.

Further, ORS chapter 370 and its precedessors, construed in *Hansen* and *Elliott,* require and set out particular forms of notices to be used. ORS 370.040; 370.082.[8]

---

[6] The statute, as pertinent in *Elliott,* then provided:

"The petition mentioned in Section 2 of this act shall set out and specify the amount of bonds proposed to be issued, the length of time they shall run, and the maximum rate of interest they shall bear. * * * The petition shall be in substance the following form * * *." Op Att'y Gen 1913, ch 103, § 3.

ORS 370.040 provides:

"The petition mentioned in ORS 370.030 shall set out and specify the amount of bonds proposed to be issued, the length of time they shall run and the maximum rate of interest they shall bear. Each petitioner shall sign his own name to the petition, the precinct in which he resides, and his post-office address shall be noted opposite his name. The petition shall be substantially in the following form:

---

To the Honorable County Court of _____ County:

"We, the undersigned registered voters, respectfully petition that you call a special election for the purpose of submitting to the voters of this county the question of issuing bonds to provide for the construction of permanent roads in this county, to the amount of $____, to run ____ years each. The bonds shall bear interest at ____ percent per year.

"Name ____, precinct ____, post-office address ____."

[7] ORS 255.085(2) does not go even that far.

[8] ORS 370.082(3), for example, provides:

"(3) The notice of special election shall be published in substantially the following form:

---

"Notice of Special Election for Issuing Road Bonds for _____ County.

"Notice hereby is given that on ____, 19__, a special election will be held in _____ County, to determine whether the county court shall issue bonds of the county to provide for permanent road construction to the amount of $____, to mature in ____ years, no more than $____ to be

Neither ORS chapter 255 nor 261 is so rigid. Had the legislature intended to require a statutory form of notice here, presumably it would have set out the form, as it has done in ORS chapter 370. We have neither the authority nor the inclination to impose ORS chapter 370 requirements on PUD elections under ORS chapters 255 and 261. *See Gurdane v. Northern Wasco PUD,* 183 Or 565, 195 P2d 171 (1948) (court would not impose on Utility District Act the more stringent requirements of Irrigation Code).

Other provisions in ORS chapter 261 evidence legislative intent to avoid rigidity in favor of vesting the PUD's board of directors with discretion. No section requires the PUD to issue any or all bonds authorized in an election. *See, e.g.,* ORS 261.355, 261.360, 261.365, 261.371.

The real question here is whether the phrase "not to exceed" was so indefinite as to mislead the electorate or to allow EPUD to impose a result different from that authorized by the election. In *Elliott* and *Hansen,* the court adopted the rationale of *Stern v. City of Fargo et al.,* 18 ND 289, 122 NW 403 (1909), where the applicable statute required the notice to state *definitely* the amount. The North Dakota court said:

> "* * * It is perfectly clear that, *in the absence of at least as specific information as is required by the statute,* complete opportunity is not afforded those interested to so investigate the various questions as to enable them to vote intelligently. * * *" (Emphasis supplied.) 18 ND at 299.

The notice here was as specific as the statute required, and we perceive nothing misleading about it. Its language clearly informed the electorate that EPUD would issue bonds up to the amount and up to the term authorized, as needed to effect the stated purpose. If EPUD should exceed that authority, that is another case not now before us.

## ILLEGAL PURPOSE

■ Plaintiffs contend that the resolution and election notice express a purpose beyond EPUD's statutory power

---

issued in any one year, and to bear interest at the rate of ＿＿ percent per year. The funds so raised shall be expended in building permanent roads, described as follows: $＿＿ shall be expended on the road from ＿＿ to ＿＿ and $＿＿ shall be expended on the road from ＿＿ to ＿＿ (etc)."

and are, therefore, illegal. Plaintiffs rely on the engineer's certificate, filed before the election, recommending acquisition of PPL's property, and on a letter sent from EPUD to PPL almost six months after the election, stating EPUD's intent to acquire that property after August, 1983. Neither the resolution nor the election notice refers to specific property or limits the method of acquisition. Both the resolution and notice closely track ORS chapter 261 provisions granting EPUD its powers. *See* ORS 261.305, 261.355. Neither the resolution nor the notice is facially invalid.

Plaintiffs contend, however, that EPUD *intends* to use the bonds to finance condemnation of PPL's existing facilities and that such condemnation would be illegal. *See* 41 Op Att'y Gen 335 (1981); *but see* ORS 261.315; Or Laws 1981, ch 865, §§ 5-6. We need not now decide whether EPUD has the power to condemn PPL facilities. The stated purpose is a legal one. If EPUD attempts to use the bond proceeds for a purpose other than that authorized in the election or for any other illegal purpose, a challenge to that action must abide the event. The fact that a PUD may at some later time attempt to act beyond its statutory authority or the authority granted by the bond election does not invalidate the election.

Affirmed.