Argued November 19, reversed and remanded December 17, 1973,
reconsideration denied January 21, petition for
review denied ·March 26, 1974

BAKER COUNTY ET AL, *Appellants, v.*
WOLFF ET AL (No. L-3607), *Respondents.*

516 P2d 1307

[ 1 ]

2

*Jesse R. Himmelsbach, Jr.,* District Attorney, Baker, argued the cause and filed the brief for appellants.

*Milo W. Pope,* Milton-Freewater, argued the cause for respondents. With him on the brief were Roy Kilpatrick, John Day, and Owen M. Panner, Bend.

*Edward J. Sullivan,* County Counsel, Hillsboro, submitted a brief amicus curiae for Association of Oregon Counties.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

Plaintiffs Baker County and its commissioners and Budget Committee appeal from a declaratory judgment which upheld an order of the circuit judge for the Eighth Judicial District of Oregon which set $14,000 as the 1972-73 yearly salary of the judge's duly appointed court reporter. The plaintiffs had set the salary at $12,180 plus fringe benefits (health insurance, retirement fund and social security) of $1,117.80. The judge's order was made ex parte after he had requested his reporter's salary be included in the budget at $15,000. He did not supply supporting data or information to the Budget Committee for his request and, though invited, did not attend the public hearing on the budget. Soon after the county budget was adopted, the judge issued his ex parte order setting the salary at $14,000. In his 10-page long order he directed that the salary be paid from county funds. Plaintiffs then initiated this proceeding. Extensive pleadings were filed, following which the parties entered into a lengthy, written stipulation of facts and issues.

Among the agreed facts are those which have been related above. It was also agreed that a "competent court reporter is essential to the operation * * *" of the court. The principal legal issue to be determined was stated in the stipulation as simply whether a judge has the authority to fix the salary of the court reporter. Other questions agreed upon were whether the judge was estopped from making the order, and whether he made his order in a lawful manner. Specifically reserved for later determination were (1) whether a necessity existed for entry of the order, and (2) whether the "additional salary increment of $1,820 * * *" was reasonably necessary. It was agreed that the factual determinations contained therein were "be-

lieved * * * to be adequate for the decision of the legal issues involved, except for the reserved issues * * *." It was recited that the court had previously ruled the proceeding was equitable in nature. The stipulation stated that the reserved issues

"* * * if it develops that the same must be resolved in order to terminate the controversy * * * shall be determined upon evidence submitted in the manner provided by law * * *."

It also provides that in the event of an appeal the trial shall be de novo in the appellate court.

■ We agree that the proceeding is equitable in nature. The complaint sought equitable relief including an injunction against enforcement of the judge's order. In *May v. Chicago Insurance Co.*, 260 Or 285, 291-92, 490 P2d 150 (1971), the court said:

"As a preliminary matter, we consider the scope of our review. Plaintiffs contend, citing *Consolidated Freightways, Inc. v. Flagg,* 180 Or 442, 176 P2d 239, 177 P2d 422 (1947), that on review of declaratory judgment proceedings this court is not bound by the trial court's findings of fact. Defendants respond that even though this court may not be bound by findings of fact in a declaratory judgment proceeding, it normally accords weight to the circuit court's decision.

"The parties' contentions on this question are applicable only to declaratory judgment proceedings which are basically equitable in nature. The broad language in *Consolidated Freightways* on which plaintiffs rely, 180 Or at 458, is no longer controlling in all declaratory judgment proceedings. It is now clear that such proceedings will be treated as either legal or equitable, depending upon their nature. *Mayer v. First National Bank of Oregon,* 260 Or 119, 133, 489 P2d 385, 392 (September 29, 1971); *Oregon Farm Bureau v. Thompson,* 235

Or 162, 179, 378 P2d 563, 384 P2d 182 (1963) * * *."

Hence, this proceeding's being equitable in nature, it is de novo in this court, regardless of the parties' stipulation. Further, this court is not bound by the trial court's findings of fact. Questions of law must be decided in this case, like others, under established principles of statutory and case law.

■ In the decree the trial judge found that under the provisions of. ORS 204.101 the county governing body has no authority to fix the compensation of the court reporter; that a judge's power to appoint the reporter carries with it by implication the authority to fix his salary; and that under the provisions of ORS 8.372 the judge has the authority to fix the salary of the reporter, and even without statutory authority the judge has inherent power to employ and fix the salary of a competent reporter in the manner and amount involved here. The trial court said in its decree that no determination of the reserved issues is required and no further factual determinations need be made. With reference to this latter finding the trial judge said at the conclusion of the arguments various things in his oral decision from the bench. They were said during colloquy with counsel, and indicated confusion as to whether the reserved questions should be decided. At one point the trial judge said:

"* * * I think in this case there was a necessity, that it was recognized, as I think the Court answered by making its order."

At another point he said with reference to the judge's order:

"I think it carries the necessary implication that it was necessary to do so. When the judge did it he

must have found it was necessary to do it. I find that he properly did it, so therefore I think it is necessarily embodied in that that he—that it was necessary to do so * * *."

At another point he said:

"* * * I find that defendant Wolff at the time he entered that order felt it was necessary to do so upon his analysis * * *."

At another point he said:

"* * * [I]f it were stipulated that the court reporter would say he would not work for any less, then it would seem to follow that the necessity had to exist * * *. I do not see where it is an issue of any great magnitude * * *."

Counsel for the county insisted that there should be a finding for "factual necessity in order to avoid two trips up * * *" (appeal). The judge then said that it was the court's understanding that when the stipulation was entered into all matters would be ruled on and that would settle the controversy insofar as testing the law was concerned. Then he said:

"* * * I am not going to make a determination on either point one or two under the 'Reserve for Later Consideration.' "

That was the last the judge said on this question before denying the county counsel's motion to decide the reserved questions. Our review of the record leads us to the conclusion at which we arrive with reference to inherent powers, infra. The facts which we need to decide the questions involved in this controversy are in the stipulation and the record. Whether the questions are reserved or not, we have the authority to decide them in this de novo appeal. We see no need for a remand to take evidence or consider additional questions.

The county's brief alleges 13 assignments of error and 38 questions to be decided. We reject this voluminous excursion into semantics. The simple question is whether the disputed order was valid. This involves (1) a consideration of ORS 204.101 and 8.372 and (2) the judge's inherent power, regardless of statutes, to issue such an ex parte order.

(1). ORS 204.101 provides:

"*The* county court or *board* of county commissioners of each county *shall fix the compensation of* its own members and of *every* other *county* officer, deputy and *employe,* including justices of the peace, constables and elective district court clerks, *but excluding* district court judges and *any court officer appointed by any judge* or judges *of* either *the circuit* or district *courts* exercising jurisdiction in the county *and compensated from county funds, where the compensation* of such officers, deputies and employes *is to be paid from county funds.*" (Emphasis supplied.)

ORS 8.372 provides:

"(1) The 'governing body of a county,' as used in ORS 8.372 to 8.387, means the county court or board of county commissioners of such county.

"(2) *The annual salary of each official reporter for the circuit court shall be not less than $7,200.* The annual salary shall be payable in monthly instalments throughout the year as county salaries are paid.

"(3) *In each judicial district composed of only one county, whenever, in the judgment of the governing body of such county, the minimum annual salary established by this section is not commensurate with the character and amount of service performed by the official reporter* or reporters in the district, *the governing body of the county may pay out of the funds of the county such additional amounts as will properly compensate such reporter*

or reporters for the services performed." (Emphasis supplied.)

The Eighth Judicial District is composed of one county and has one judge. ORS 3.011.

ORS 204.101 was first enacted in 1953. Oregon Laws 1953, ch 306, § 1. Prior to the enactment of ORS 204.101, the salaries of county officers, deputies and employes were set by legislative enactment (§§ 87-1001 through 87-1057, OCLA). There is no legislative history available referring directly to the exclusion of court personnel from the counties' salary setting powers. The legislature continued after the enactment of ORS 204.101 to set the salary of court reporters. ORS 8.380 (1959). The salary of court reporters established by law in 1959 was $6,000 in Clackamas, Lane, Marion and Multnomah Counties and $5,600 in other counties.

In 1961 a bill (HB 1226) was introduced to raise the salaries of all court reporters to $9,000. The bill was substantially amended before enactment. What emerged as Oregon Laws 1961, ch 447 is now codified in ORS 8.372 through 8.390. HB 1226 was altered in the House Judiciary Committee from creating a flat $9,000 salary to the present scheme. Prior to this amendment and in direct reference thereto, the attorney representing the State Association of Court Reporters testified:

"If it is left to the discretion of the counties as to the pay, there should be a minimum set by the state. Multnomah County Commissioners have indicated that if the state sets a minimum salary, the[y] would like authority to supplement it." House Judiciary Committee Minutes, February 28, 1961, p 1.

When the bill as amended was before the Senate Judiciary Committee, the attorney testified:

> "It grants to the court reporters an increase in salary which would be the first since 1957. The second thing the bill does is to establish $6,600 as a minimum salary throughout the state and from that point it is up to the county courts to determine the salaries of its reporters. If the county desires to do so, it may augment this salary. This bill will relieve the reporters of the necessity of coming back to the Legislature every time they need a raise." Senate Judiciary Committee Minutes, April 25, 1961, p 4.

In 1967 the minimum salary was raised to $7,200. Oregon Laws 1967, ch 533, § 16. The statutory language makes clear that the "county courts" referred to in the attorney's testimony were the county governing bodies and not the circuit courts.

Defendants' (and apparently the trial judge's) construction of ORS 204.101 and 8.372 is that ORS 204.101 controls ORS 8.372, and despite the specific language and obvious intent of ORS 8.372 the circuit court and not the county governing body has statutory authority to set the salary of the court reporter. This position appears to be based on the theory that ORS 204.101 is a legislative recognition of the inherent power of courts to set salaries of their personnel. This is an untenable position.

In ORS 204.101 the legislature delegated authority to fix the salaries of certain county officials to the counties. It specifically retained authority to continue to set salaries of court personnel. In 1961, in ORS 8.372, it further delegated to the counties the power to set the salary of court reporters above a legislated minimum. There is no inconsistency because in neither

instance was the legislature concerned with "inherent power" of the circuit courts to establish salaries for court personnel. In each case the decision was made by the state legislative body to delegate decision-making power to the local legislative body.

■ In an analogous case our Supreme Court construed ORS 419.604 (1),

"Subject to subsection (2) of this section, the judge or judges of the juvenile court in any county having a population less than 300,000 shall appoint or designate one or more persons of good moral character as counselors of the juvenile department of the county, to serve at the pleasure of and at a salary designated by the appointing judge and approved by the budget-making body of the county,"

to mean that the salaries of juvenile counselors were to be set by the appointing judges

"* * * subject to the scrutiny of the budget-making body of the county only for the purpose of rejecting the proposed salaries if they were found to be unreasonable.

"* * * * *

"Under our construction of the statute the county board has the burden of proving that the salaries designated by the judges are unreasonable * * *." *Norman v. Van Elsberg,* 262 Or 286, 290-91, 497 P2d 204 (1972).

While the conclusion reached by the Supreme Court as to the meaning of ORS 419.604 (1) may or may not be obvious, ORS 8.372 (3) is distinguishable because the authority to pay more than $7,200 to a court reporter is left initially to the "judgment of the governing body of such county * * *." In ORS 419.604 (1) the initial judgment in setting the salary is left to the juvenile court judge. We conclude that the clear language of the statutes involved does not support Judge Wolff's

order or the trial judge's conclusions with reference thereto.

(2). Does the circuit court have inherent power to set a court reporter's salary?

In *Norman v. Van Elsberg,* supra, the Supreme Court reversed a decision of this court that had construed ORS 419.604 (1) to the effect that the juvenile court employe's salary was to be determined by the county unless the appointing court established that the salary thus set was unreasonable. *Norman v. Van Elsberg,* 7 Or App 66, 489 P2d 394 (1971). In our decision we explored the area of the court's inherent power to discharge the functions imposed by the constitution upon the judiciary. After discussing several leading cases in the area, we concluded:

> "* * * [T]he judges in the event of disagreement with the board of county commissioners must establish in an appropriate court proceeding the court's requirements as set forth in its requested budget are *reasonably necessary* to enable the effective discharge of its required functions. Their [the courts'] administrative determination thus remains subject to review in a judicial proceeding. We need not here decide the standards and considerations which must guide such a decision." (Emphasis supplied.) 7 Or App at 83.

In reversing, the Supreme Court said:

> "Our conclusion finds support in cases in other states, although on different grounds. It is generally reasoned that salaries and other expenses incident to the operation of the courts can be set by the judges in the exercise of the inherent power of the judiciary as a separate branch of government.[9] We do not express our view as to the validity of such reasoning. We have based our conclusion upon the interpretation of ORS 419.604 (1), and therefore it

is unnecessary to consider the constitutional relationship between the courts and the legislative branch.

"⑨ Mann v. County of Maricopa, 104 Ariz 561, 456 P2d 931 (1969); Powers v. Isley, 66 Ariz 94, 183 P2d 880 (1947); Smith v. Miller, 153 Colo 35, 384 P2d 738 (1963); Noble County Council et al v. State ex rel Fifer, 234 Ind 172, 125 NE2d 709 (1955); Bass v. County of Saline, 171 Neb 538, 106 NW2d 860 (1960)." 262 Or at 291-92.

The cases cited in the footnote to the Supreme Court's opinion in *Norman* dealt with situations where statutory power to control the hiring, salary or retirement age of court employes was vested in the court subject to the approval of another branch of the government. In each of those cases the court concluded that the approval of the other branch was intended to be a ministerial act that would automatically follow unless the court was shown to have acted unreasonably, arbitrarily and capriciously. *Mann v. County of Maricopa,* 104 Ariz 561, 456 P2d 931 (1969).

In *Ortwein v. Schwab,* 262 Or 375, 498 P2d 757 (1972), *affirmed* 410 US 656, 93 S Ct 1172, 35 L Ed 2d 572 (1973), the Supreme Court in a different situation stated:

"We accept the doctrine of inherent power for the judiciary * * *. In *State ex rel Bushman v. Vandenberg,* 203 Or 326, 335, 276 P2d 432, 280 P2d 344 (1955), we quoted with approval from Rottschaefer, Constitutional Law, 56 (1939):

" ' "* * * The judicial power thus conferred is generally held to include not merely that of deciding cases but also incidental powers *necessary* to the effective performance of that primary function." '

"We look upon the doctrine of inherent judicial power as the source of power to do those things *necessary* to perform the judicial function for which

the legislative branch has not provided, *and, in rare instances, to act contrary to the dictates of the legislative branch * * *.*" (Emphasis supplied.) 262 Or at 385.

Preceding the quoted language above, the court had said the "most drastic action a court can take * * * is, acting in defiance of a specific, unambiguous legislative command * * *." 262 Or at 385.

■ Assuming without deciding that the circuit court has the inherent power to set the court reporter's salary at a level higher than the legislature or its delegatee has seen fit to establish it, the exercise of this power must in such event be contingent upon its being *necessary* for the performance of the judicial function. By deciding that the judge had inherent power to set the reporter's salary, the trial court by implication decided at least the first reserved question, regardless of what the decree recites.

It is defendants' position, regardless of whether the trial judge ruled upon the question, that adequate proof of the necessity of establishing the court reporter's salary at $14,000 is contained in Judge Wolff's order of June 16, 1972. Some of the trial judge's remarks indicate that that at least started out to be his finding. Judge Wolff's order essentially sets out that if defendant Gryniewski, the court reporter, is not paid a salary of $14,000 he will quit and the court will not be able to obtain the services of as capable a court reporter. The order states:

> "* * * To lose an official court reporter could mean that we may very well be forced to use a reporter pro tem under ORS 8.320 and to hire a secretary under ORS 8.330. This could easily cost the county $20,000 per year for two persons—a reporter pro tem and a secretary to the Circuit Judge * * *."

The same order, while stating that such a scheme would be less efficient and highly unsatisfactory, does not state in what manner the use of a pro tem court reporter would prevent the court from exercising its function, or come close thereto.

■ In one of the concluding paragraphs of Judge Wolff's order it is stated:

"We set the court reporter-secretary's salary at $14,000 per year for fiscal year 1972-73. Anything less than that amount would be unreasonable and inadequate under all the circumstances. We cannot afford to be changing court reporters every few months as several of our fellow Circuit Court Judges have been forced to do. In fifteen years on the Bench I have had in this district two official court reporters—each a person of excellence and dependability and dedicated to the cause of the administration of justice. The Circuit Court Judges to the north and south of us have changed court reporters so often that it would take the fingers of two or three hands to count them. We cannot afford in this particular county to be changing court reporters as they do in Portland, Oregon, or elsewhere in Oregon, because the reporters go to the free lance firms making twice what the official court reporters receive, or to the states of California and Washington for better salaries."

The order does not say or support the conclusion that failure to retain the services of defendant Gryniewski is necessary for the court to exercise its functions. The order in the part quoted, supra, does make statements that support a conclusion that the failure to retain Gryniewski would put the Baker County Circuit Court in the same situation as three other circuit courts, all of which to the best knowledge of this court have functioned in a reasonably satisfactory manner and are continuing to do so. If the courts have inherent power

to provide for their own necessities, that power does not give authority to compel the legislative branch of government to provide those necessities in a manner deemed by the courts to be most desirable.

Reversed and remanded with instructions to render a decree in favor of plaintiffs' contentions including the injunction prayed for.