Argued and submitted September 13, resubmitted In Banc
December 9, 1982, affirmed January 19, reconsideration denied March 11,
petition for review allowed April 12, 1983 (294 Or 749)
See 295 Or 542, 669 P2d 314 (1983)

CIRCUIT COURT OF OREGON, FIFTEENTH
JUDICIAL DISTRICT, JUVENILE JUDGE,
HONORABLE RICHARD L. BARRON et al,
*Petitioners,*

*v.*

AFSCME, LOCAL 502-A,
*Respondent.*

(No. C-65-81, CA A23894)

657 P2d 1237

William F. Gary, Solicitor General, Salem, argued the cause for petitioners. With him on the brief were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and Jan Peter Londahl, Assistant Attorney General, Salem.

Henry H. Drummonds, Eugene, argued the cause for respondent. With him on the brief were Wendy L. Greenwald, and Kulongoski, Heid, Durham & Drummonds, Eugene.

RICHARDSON, J.

ROSSMAN, J., dissenting.

.

.

## RICHARDSON, J.

Petitioner Barron is the juvenile court judge for Coos County. He appeals from an order of the Employment Relations Board (ERB), holding that he committed unfair labor practices under ORS 243.672(1)(e) and (1)(g) by refusing to bargain with respondent AFSCME Local 502-A (union), the exclusive representative of Coos County juvenile court counselors, and "by establishing terms and conditions of employment" for the counselors "at variance with the terms of the collective bargaining agreement" applicable to the bargaining unit of which, according to ERB, the counselors are a part.[1] Petitioner's only assignment of error is that ERB erred by holding that he and employees of the juvenile court are subject to the Public Employe Collective Bargaining Act (PECBA) ORS 243.650 *et seq.*

Petitioner makes two basic contentions: first, that he has comprehensive authority to hire, fire and set the salaries of juvenile court counselors under ORS 419.604(1), that PECBA is inconsistent with that statutory authority and that ORS 419.604(1) is the more specific statute and therefore prevails instead of PECBA; and, second, that the constitutional requirement of separation of powers would be violated if PECBA were applicable to petitioner and the counselors.

ORS 419.604(1) provides:

"Subject to subsection (2) of this section, the judge or judges of the juvenile court in any county having a population less than 300,000 shall appoint or designate one or more persons of good moral character as counselors of the juvenile department of the county, to serve at the pleasure of and at a salary designated by the appointing judge and approved by the budget-making body of the county."

ORS 243.650(17) and (18) define "public employe" and "public employer," respectively, for purposes of PECBA:

"(17) 'Public employe' means an employe of a public employer but does not include elected officials, persons

---

[1] Although other parties are also designated as "petitioners" in the petition for judicial review, Judge Barron as juvenile court judge is the relevant one for purposes of the issues in this appeal, and the term "petitioner" in this opinion refers to him.

appointed to serve on boards or commissions or persons who are 'confidential employes' or 'supervisory employes.'

"(18) 'Public employer' means the State of Oregon or any political subdivision therein, including cities, counties, community colleges, school districts, special districts and public and quasi-public corporations, except mass transit districts organized under ORS 267.010 to 267.390. 'Public employer' includes any individual designated by the public employer to act in its interests in dealing with public employes."

■    Petitioner does not argue that he and the counselors are outside the literal meaning of the PECBA definitions of "public employer" and "public employe," and they obviously do come within those definitions. His statutory argument is that PECBA contains provisions that are in conflict with the plenary nature of his authority under ORS 419.604(1) and that

"* * * the legislative grant of authority to the juvenile judges to 'appoint or designate' counselors of the juvenile department 'to serve at the pleasure of and at a salary designated by the appointing judge and approved by the budget-making body of the county' is thoroughly inconsistent with the provisions of the PECBA. The PECBA is a statute of general applicability; it applies to all public employers and employees. ORS 419.604(1), on the other hand, is highly particularized; it applies only to judges and employees of the juvenile court in counties having a population less than 300,000. Where a general and particular provision of the statutes are inconsistent, the particular provision is paramount to the general provision. ORS 174.020. Since juvenile court judges cannot both exercise the full authority granted by ORS 419.604(1) and be subject to the PECBA, juvenile judges should be exempted from ORS Chapter 243." (Footnote omitted.)

■ ▪    As the union points out, the difficulty with petitioner's statutory argument is that the stated authority over employment and employment conditions that various statutes confer on various public employers who are clearly subject to PECBA is as broad as the authority ORS 419.604(1) gives juvenile court judges. For example, in *Hockema v. OSEA,* 34 Or App 527, 579 P2d 282, *rev den,* 283 Or 235 (1978), the issue was whether a sheriff and his deputies were subject to PECBA, notwithstanding the

broadly stated authority over the employment of deputies that ORS 204.635 confers on sheriffs. ORS 204.635(1) provides in part:

"A sheriff's deputies shall be appointed by him in writing and continue during his pleasure. * * *"

We held in *Hockema:*

"* * * ORS 204.635(1) and (3) grant authority to sheriffs to employ and discharge deputies and provide that sheriffs are generally responsible for the conduct of deputies. Thus a 'public employer'—the state—has designated sheriffs to act in its interests in dealing with deputies. We conclude that a sheriff is a public employer within the meaning of ORS 243.650(18), *see* Op Att'y Gen 181 (Or 1970), and his deputies are public employes, ORS 204.635." (Footnote omitted.) 34 Or App at 529-30.

The quoted language of ORS 204.635(1) construed in *Hockema* is substantively identical to the language in ORS 419.604(1) relating to petitioner's authority to hire and fire counselors. *See also, e.g.,* ORS 204.601 (certain county employees "shall hold office during the pleasure of the appointing officer"); ORS 332.505 (school boards have authority to "define the duties, terms and conditions of employment and fix the compensation" of school district employees); *AFSCME v. Executive Dept.,* 52 Or App 457, 467-470, 628 P2d 1228, *rev den* 291 Or 771 (1981) (Personnel Division's authority to adopt classification and compensation plans under ORS ch 240 is not in conflict with the requirement of PECBA that public employer bargain over compensation with representatives of employees subject to the Division's plans); *cf.* ORS 419.604(4) (juvenile counselors in counties with a population of 300,000 or more "shall be appointed in accordance with" ORS ch 241, governing civil service for county employees).

We find nothing in the *language* of ORS 419.604(1) that makes it less consistent with the simultaneous operation of PECBA than other statutes that give public officers or bodies authority to engage employees and establish employment terms. Petitioner argues, however, that the Supreme Court in *Norman v. Van Elsberg,* 262 Or 286, 497 P2d 204 (1972), and this court in *Schmidt v. Jackson County Juv. Dept.,* 49 Or App 349, 619 P2d 1307 (1980),

suggested in dictum or necessarily implied by their reasoning that ORS 419.604(1) makes PECBA inapplicable to juvenile court judges and counselors.

The problem in *Norman* was to determine the division of authority under ORS 419.604(1) between the juvenile court and the county governing body over fixing counselors' salaries. We do not read *Norman* as having ramifications beyond that issue, at least for purposes of construing ORS 419.604(1). *Schmidt* is closer to the point. The issue there was whether the juvenile court judge and a counselor were subject to a collective bargaining agreement between Jackson County and the bargaining representatives for county employees. The counselor contended that, even though the judge and juvenile department were not signatories to the agreement, they were bound by it either because the employer representative had apparent authority to negotiate on their behalf or because they had ratified the agreement. We rejected those contentions:

> "Petitioner [the counselor] appears to acknowledge that juvenile court judges are not *required* to accord the collective bargaining rights of ORS 243.650 *et seq.* to juvenile counselors who serve pursuant to ORS 419.604. * * *

> "* * * * *

> "In addition, petitioner's ratification argument fails because he does not contend that any of the acts which gave rise to the ratification was performed by the judge or with his approval. ORS 419.604 places responsibility for the tenure and compensation of juvenile counselors on judges of the juvenile court; assuming without deciding that that statutory responsibility can be contractually waived by the person having it,[6] it cannot be contractually modified or waived by others. Therefore, a contractual modification or waiver cannot be *ratified* by others.

> "* * * In light of the express provision of ORS 419.604 that the salaries and job tenure of juvenile counselors are to be determined by juvenile court judges rather than by the collective bargaining process, the employee bargaining representatives could not reasonably have relied on the passive events to which petitioner points as any indication that the judge had authorized the employer representatives to bargain on his behalf about the terms and conditions of petitioner's employment.

"We conclude that the juvenile court judge did not agree to make petitioner's employment tenure subject to the collective bargaining agreement rather than the judge's own authority under ORS 419.604.

---

[6]

"See, *Central Point Sch. Dist. v. ERB,* 27 Or App 285, 555 P2d 1269 (1976), *rev den* [277 Or 491] (1977)." 49 Or App at 352-54. (Emphasis in original.)

In his brief, petitioner quotes some of the foregoing language from *Schmidt* and then states:

"This recognition that juvenile counselors serve pursuant to the provisions of ORS 419.604 and not the collective bargaining act is not, in the narrow sense, a holding. The petitioner apparently acknowledged that juvenile court judges are not required to accord the collective bargaining rights of ORS 243.650 et seq. to juvenile counselors and the issue in the case seems to have been whether the juvenile court judge was otherwise bound by the labor agreement on one theory or another. But, dicta or not, Judge Schwab's interpretation is sound. Both ORS 419.604 and the PECBA cannot control labor relations in the juvenile court systems; and since ORS 419.604 addresses a specific and discrete circumstance, its provisions control. * * *"

The union, after referring to essentially the same language in *Schmidt,* states:

"This is a correct, if somewhat poorly worded, review of the legislation applicable to the juvenile judges and juvenile counselors. There is a statute, ORS 419.604, which expressly provides that salaries for juvenile counselors be set by juvenile judges. There is *no express legislative provision* which states that juvenile judges must collectively bargain concerning the terms and conditions of employment of the juvenile counselors. There is also no express legislative provision similar to this for other county officers. There is though, a collective bargaining act which generally covers all public employers. The court, by the above statement, has not precluded coverage under the Act. They have merely made the statement to show why passive action on the part of the juvenile judge in the *Schmidt* case was not sufficient to bind the judge to the agreement negotiated by the county." (Emphasis the union's.)

We agree generally with the union's understanding of our language in *Schmidt,* and we think that petitioner reads too much into it. In the context of the case, the contrasts we drew between ORS 419.604(1) and the collective bargaining process related only to whether the judge had delegated authority to the county's negotiators, and not to whether the judge's authority under ORS 419.604(1) was inconsistent with his being subject to PECBA. Similarly, in context, our statement that *"petitioner* appears to *acknowledge"* (emphasis supplied) that juvenile court judges are not required to follow PECBA procedures means only that the petitioner in *Schmidt* did not *contend* that the procedures were required.[2]

In sum, the question of whether ORS 419.604(1) conflicts with PECBA was not before us and was not decided in *Schmidt,* and we find nothing in that case or *Norman v. Van Elsberg, supra,* which is contrary to what the language of the statutes indicates the answer to be. For the reasons stated earlier, we conclude that the statutes are not inconsistent, and we reject petitioner's argument that the application of PECBA to him and the counselors is precluded by ORS 419.604(1).

The argument on which petitioner places greater emphasis is that the application of PECBA would violate the constitutional separation of powers doctrine.[3] At oral argument, petitioner stressed the point that a court cannot be subjected to the jurisdiction of an "arm of the executive," such as ERB. Petitioner cites no authority for that proposition but contends that the exercise of jurisdiction by ERB over the courts would stand things on their head. The

---

[2] The choice of the word "acknowledge" was unfortunate. The union feels that some of our other language in *Schmidt* was also less than optimal, as indicated by the union's statement that our review of applicable legislation was "correct, if somewhat poorly worded." Because we strive to improve our work product, we welcome constructive criticism of the kind the union offers. We would have found the union's observation even more helpful had it correctly quoted the language it criticized.

[3] Or Const, Art III, § 1 provides:

"The powers of the Government shall be divided into three seperate (sic) departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided.—"

illustration he gives is that, if he fails to comply with ERB's order, ERB's recourse would be to seek enforcement in the circuit court on which petitioner sits. ORS 243.766(4). The union's response is that there are other judges on that court who are not parties here and that judges from other districts and pro tempore judges are also available alternatives.

There are problems with petitioner's argument. In the first place, there is a tail wagging the dog aspect to it. PECBA creates employment rights. Petitioner's contention would in effect deny those rights to the employees of a constitutional department of the government solely because of the mechanism the legislature chose for enforcement of the rights. Moreover, we do not find the relationship between the courts and ERB, if PECBA does apply to the former, to be as unique or anomalous as petitioner suggests. For example, courts and their employees are subject to the Workers' Compensation Law. Benefits to employees under that law can be subject to determination by an executive agency, the orders of which are appealable to the courts. More fundamentally, it is only somewhat accurate, but far from definitive, to label ERB an "arm of the executive." ERB often acts in a quasi-judicial capacity and, as petitioner's present appeal illustrates, its orders in that capacity are subject to review by the courts.

We are unpersuaded by petitioner's contention that the nexus PECBA creates between petitioner and the administrative agency violates the separation of powers doctrine. In its brief, the union discusses whether the application of PECBA to petitioner is unconstitutional as an excessive incursion by the *legislature* into judicial affairs. In our view, that is the more significant separation of powers issue in this case.

Oregon case authority pertaining to the separation of powers between the legislature and the courts and the permissible ranges of legislative regulation of the courts has involved a variety of legislation and has become intertwined with the concept that the courts have "inherent powers" that are incompatible with some kinds or manifestations of legislative control. The general test was articulated in *Ramstead v. Morgan,* 219 Or 383, 347 P2d 594 (1959), where the court stated:

> "Unquestionably, the legislature may act authoritatively with respect to some matters which affect the judicial process. * * * The limits of legislative authority are reached, however, when legislative action unduly burdens or unduly interferes with the judicial department in the exercise of its judicial functions. * * *" 219 Or at 399. (Citations omitted.)

The *Ramstead* test has been adhered to by the court in later decisions. *See, e.g., State ex rel Emerald PUD v. Joseph,* 292 Or 357, 361, 640 P2d 1011 (1982); and *Sadler v. Oregon State Bar,* 275 Or 279, 285, 550 P2d 1218 (1976).

We find no Oregon case involving the relationship of courts and their employees where the separation of powers or inherent powers issue has been decisive. In *Norman v. Van Elsberg, supra,* the court noted:

> "Our conclusion finds support in cases in other states, although on different grounds. It is generally reasoned that salaries and other expenses incident to the operation of the courts can be set by the judges in the exercise of the inherent power of the judiciary as a separate branch of government. We do not express our view as to the validity of such reasoning. We have based our conclusion upon the interpretation of ORS 419.604(1), and therefore it is unnecessary to consider the constitutional relationship between the courts and the legislative branch." (Footnote omitted.) 262 Or at 291-92.

In *Baker County v. Wolff,* 16 Or App 1, 516 P2d 1307 (1973), *rev den* (1974), the issue was whether the defendant circuit court judge had inherent power to set his court reporter's salary at a higher amount than the plaintiff county officers had established. We said:

> "Assuming without deciding that the circuit court has the inherent power to set the court reporter's salary at a level higher than the legislature or its delegatee has seen fit to establish it, the exercise of this power must in such event be contingent upon its being *necessary* for the performance of the judicial function. * * *
>
> "* * * * *
>
> "The order does not say or support the conclusion that failure to retain the services of [the reporter] is necessary for the court to exercise its functions. The order in the part quoted, supra, does make statements that support a conclusion that the failure to retain [the reporter] would put the

Baker County Circuit Court in the same situation as three other circuit courts, all of which to the best knowledge of this court have functioned in a reasonably satisfactory manner and are continuing to do so. If the courts have inherent power to provide for their own necessities, that power does not give authority to compel the legislative branch of government to provide those necessities in a manner deemed by the courts to be most desirable." 16 Or App at 13-15. (Emphasis in original.)

*See also Dist. Ct. v. Multnomah Co.,* 21 Or App 161, 534 P2d 207 (1975), where we found it unnecessary to decide whether a court could invoke inherent power to dismiss an employee who claimed civil service job protections, because we concluded that the employee did not have civil service status.

In the present case, ERB made the following finding regarding the functions of Coos County juvenile counselors and their relationship to the juvenile court:

"* * * Juvenile counselors are considered included within the County's Juvenile Department, which is run by a director. The current director considers himself a County employe, but was hired, at least in part, on the basis of an interview conducted by the previous juvenile judge. Juvenile counselors are paid from County funds and work under the supervision and direction of the juvenile judge. Juvenile counselors perform social casework in the investigation, counseling, adjustment, rehabilitation and guidance of children who, for various reasons, have been placed under the jurisdiction of the juvenile judge. * * *"

Petitioner expressly accepts that finding,[4] and it is consistent with the statutory provisions relating to the counselors' duties and their accountability to the court. *See, e.g.,* ORS 419.606 to 419.610.

---

[4] Petitioner also accepts ERB's findings to the effect that, prior to his designation as the juvenile court judge, "juvenile counselors were consistently treated by the county and the [Coos County Circuit Court] judges as being incorporated in the unit represented by the union." Petitioner does not specifically assign error to ERB's conclusion that, by virtue of actions taken by his predecessor,

"* * * the office of juvenile court judge is a member of a multi-employer bargaining group represented by the County and * * * the Juvenile Department counselors are members of a multi-employer bargaining unit represented by AFSCME Local 502A"

The union argues that the hiring of counselors and the establishment of the terms and conditions of their employment is an administrative rather than a judicial responsibility of a juvenile court judge. However, the nature of the counselors' duties, as found by ERB and as defined by statute, suggests that their activities have some level of relationship to the juvenile court's judicial functions and we assume, *arguendo,* that that is so. *See* ORS 419.608. However, that is not dispositive; there was also a very clear connection between the duties of the court reporter and the judicial functions of the judge in *Baker County v. Wolff, supra.*

The union also argues:

"* * * [T]he PECBA does not limit the judge's right to set terms and conditions of employment. It merely requires Judge Barron to bargain with AFSCME Local 502A concerning the setting of the terms and conditions. Judge Barron has the ultimate decision making power * * *."

The union's argument is more correct in theory than in practice, and it is not wholly correct in theory. ORS 243.650(4) provides:

" 'Collective bargaining' means the performance of the mutual obligation of a public employer and the representative of its employes to meet at reasonable times and confer in good faith with respect to employment relations, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party. *However, this obligation does not compel either party to agree to a proposal or require the making of a concession.* " (Emphasis supplied.)

Nevertheless, we consider it axiomatic that the requirement of bargaining in good faith does place some limitations on the employer's decision-making authority over terms and

---

nor does he assign as error ERB's conclusion that he was bound by the collective bargaining agreement. Although petitioner *does* argue that, because of the statutory and constitutional considerations discussed in this opinion, he *cannot* be bound by PECBA requirements or, implicitly, by the collective bargaining agreement, he does not contend that ERB's conclusions are incorrect on any other basis, and he does not assign error to any finding or conclusion of ERB except its holding that he and the counselors are subject to PECBA.

conditions of employment, and other requirements of PECBA also limit the employer's authority. If substantiation of that proposition is necessary, we point to the fact that one of petitioner's violations of PECBA, as found by ERB, was that he unilaterally established employment terms and conditions.[5]

■ However, the issue here is not whether PECBA requirements could have *any* impact on judicial functions or could in *any* way limit petitioner's authority over the employment of and employment terms for the counselors, but whether those requirements *unduly* burden or interfere with petitioner's performance of his judicial functions. We conclude that the two PECBA requirements with which petitioner did not comply—that he bargain with the counselors' representative and refrain from establishing terms and conditions of the counselors' employment in violation of applicable contractual provisions—do not constitute an undue burden on or interference with his judicial functions. Those requirements are not facially inconsistent with petitioner's ability to exercise necessary authority over the counselors' *performance* of their duties or with the counselors' ability to perform those duties.

Petitioner, and to a slightly less extent the union, invite us to look beyond the question whether those two specific requirements of PECBA which ERB found petitioner had violated can constitutionally apply to him. We are asked to reach the general issue whether PECBA, taken as a whole, can apply to any court. We decline that invitation.

As we have noted, petitioner's assignment of error is that ERB was incorrect in concluding that he and the counselors are subject to PECBA. He has not challenged any finding, conclusion or remedial directive of ERB on any

---

[5] ERB states:

"A unilateral change in conditions of employment by an employer during the course of the collective bargaining relationship normally is regarded as a *per se* refusal to bargain. * * *"

We do not express agreement or disagreement with that statement, but we do find it self-evident that the requirement that terms and conditions of employment be the subject of collective bargaining does limit the employer's power to take actions regarding terms and conditions of employment.

other ground. *See* n 4, *supra.* In short, petitioner has formulated his challenge to ERB's order and to the applicability of PECBA in the broadest and most general terms.[6] He observes, for example:

"* * * If the parties fail to reach an agreement after meeting and conferring for a reasonable period, the ERB appoints a mediator. ORS 243.712(1). If the dispute has not been settled after 15 days of mediation, any party can initiate and compel factfinding. ORS 243.712(2)(b). If fact-finding fails, the employee unit may strike 30 days after the publication of the factfinder's recommendation unless the strike creates a clear and present danger or threat to the health, safety or welfare of the public. If a strike creates a danger to the welfare of the public, as would almost certainly be the case were juvenile court employees to strike, the public employer concerned may petition the circuit court for relief, which must include an order that the labor dispute be submitted to final and binding arbitration. ORS 243.726(3). * * *"

However, there is no issue in this proceeding about the application of the post-impasse PECBA provisions to petitioner and the counselors. It is not determined at this time whether negotiations between petitioner and the counselors *ever* will reach impasse and, if they do, whether the ultimate phase of any dispute would be governed by PECBA provisions applicable to employees who can strike or the provisions applicable to those who cannot.[7]

In *State ex rel Emerald PUD v. Joseph, supra,* the issue was whether the legislative requirement that this

---

[6] The union also seems to regard this case as a possible occasion for addressing broad constitutional issues. It notes in its brief:

"Although the issue of a violation of the separation of powers doctrine as presently reviewed in this brief only concerns juvenile court judges, this court may wish to recognize the broader application a decision on this issue could have in light of numerous court employes who will be brought under a judicial employer under the new Court Reform Bill, Oregon Laws 1981, Ch. 3 (Special Session) effective January 1, 1983."

[7] The dissent takes the view that the constitutional inquiry must extend to all of the provisions of PECBA rather than being restricted to the provisions which are involved in this case. The *apparent* basis for that view is the dissent's understanding that, once the statutory process begins, the culmination must necessarily be an agreement, a strike or binding arbitration, and that each of those alternatives would unduly burden the exercise of judicial functions. The dissent postulates but does not really explain why any or all of those alternatives would be unduly burdensome.

court determine certain appeals within three months "from the time of taking such appeal[s]" violates the separation of powers doctrine. The Supreme Court stated:

"* * * [W]e conclude that the legislative command to the Court of Appeals to hear and determine the case within three months from the time of taking the appeal does not *on its face necessarily* 'unduly burden or unduly interfere with the judiciary in the exercise of its judicial functions.' 'Unduly,' in this context, means that it is impossible *in the individual case,* within the statutory deadline, for counsel to complete proper briefing or other documentation adequate for a responsible judicial decision, and for the court to arrive at a reasoned decision consistent with the judicial responsibility imposed by Art VII. *We do not infer in the abstract* that the three-month limitation *does or does not unduly interfere* with the court's conscientiously and competently performing its judicial function under Art VII, § 1 (amended)." 292 Or at 362. (Emphasis supplied.)

The quoted language *suggests* that the same statutory requirement *might* unduly interfere with the performance of this court's judicial functions in some cases. *See Pac. Power & Light v. Emerald P.U.D.,* 58 Or App 21, 646 P2d 1360, *rev den* 293 Or 635 (1982). However, the Supreme Court followed the decisional principle of deciding constitutional issues narrowly and did not "infer in the abstract" that the legislation was unconstitutional.

We recognize that the parties to this case might be assisted by our reaching the broader issues that they consider implicated by the specific issues the ERB order addresses. However, neither the parties' arguments nor principles of judicial restraint are conducive to our doing so.

We hold:

1. Petitioner is a "public employer" under ORS 243.650(18), and the juvenile court counselors are "public employes" under ORS 243.650(17).

2. ORS 419.604(1) is not inconsistent with the applicability of PECBA to petitioner and the counselors.

3. The requirements of PECBA that petitioner bargain in good faith with the counselors' representative and that he not take unilateral action to establish "terms

and conditions of employment for [the counselors] at variance with the terms" of applicable collective bargaining agreements do not violate the constitutional separation of powers.

4. ERB did not err in holding that petitioner committed unfair labor practices under ORS 243.672(1)(e) and 243.672(1)(g).

Affirmed.

**ROSSMAN, J.,** dissenting.

Given the ominous and unforeseen consequences that often flow from an appellate court's tinkering with the trial court system, the majority's assertion that it has attempted to restrict the reach of its decision is understandable. However, the furrow made by the majority is not the work of a well-aimed, single-bladed plow, but rather the kind of swath left by a misdirected bulldozer. I am reminded of a recent radio news story that told of a sign at the entrance to a dirt road in Tennessee that warned drivers: "Choose your rut carefully, you'll be in it for the next 18 miles." That admonition certainly applies to the resolution of the question presented here. I have the uneasy feeling that, at one fell swoop, the majority's conclusions may have effectively amended the constitutional principle of separation-of-powers, repealed existing statutes providing for compensation of juvenile court employes, endangered the court's relationship with other support personnel and, arguably, abolished the doctrine of inherent powers. Specifically: (1) I am *not* persuaded that ORS 419.604(1) is consistent with the applicability of PECBA to petitioner and the counselors; (2) I do *not* agree with the majority's conclusion that the requirements that petitioner bargain in good faith with the union and refrain from unilaterally setting terms and conditions of the counselors' employment do not violate the separation-of-powers doctrine; and (3) I do *not* agree that we need not consider, in this case, the constitutional implications of the application of the post-impasse PECBA provisions to petitioner and the counselors. For these reasons, I respectfully dissent.

## The Statutes

ORS 419.604(1) provides:

"Subject to subsection (2) of this section, the judge or judges of the juvenile court in any county having a population less than 300,000 shall appoint or designate one or more persons of good moral character as counselors of the juvenile department of the county, to serve at the pleasure of and at a salary designated by the appointing judge and approved by the budget-making body of the county."

In *Norman v. Van Elsberg,* 262 Or 286, 290, 497 P2d 204 (1972), the Supreme Court construed the statute to mean that

"* * * [t]he *juvenile court judges* were to have the authority to *fix* the salaries subject to the scrutiny of the budget-making body of the county *only* for the purpose of rejecting the proposed salaries if they were found to be unreasonable." (Emphasis supplied.)

It is equally clear from the plain language of the statute that juvenile court judges were intended to have the authority also to hire counselors "to serve at the pleasure of [the court]." The intent expressed seems to me to be fundamentally *inconsistent* with the requirements of PECBA that salaries and terms and conditions of employment be subject to collective bargaining, *see* ORS 243.650(4) and 243.672(1)(e), and that, in the event agreement on such matters is not reached within a reasonable time, the impasse provisions of PECBA will apply.[1] It appears that we recognized that inconsistency in *Schmidt v. Jackson County Juv. Dept.,* 49 Or App 349, 353-54, 619 P2d 1307 (1980):

"* * * In light of the express provision of ORS 419.604 that the salaries and job tenure of juvenile counselors are to be determined by juvenile court judges *rather* than by the collective bargaining process, the employee bargaining representatives could not reasonably have relied on the passive events to which petitioner points as any indication that the judge had authorized the employer representatives to bargain on his behalf about the terms and conditions of petitioner's employment."[2] (Emphasis supplied.)

---

[1] *See* discussion, *infra,* at 332-33.

[2] I agree with the majority that in *Schmidt v. Jackson County Juv. Dept,* 49 Or App 349, 619 P2d 1307 (1980), we held only that the judge involved was not a party to the specific collective bargaining agreement: we did not expressly determine whether the judge was subject to PECBA.

Finally, as petitioner correctly observes, PECBA is a statute of "general applicability" and ORS 419.604(1) is "highly particularized." Where the terms of two statutes are inconsistent, ORS 174.020 provides, in part, that "when a general and particular provision are inconsistent, the latter is paramount to the former." It may be possible, of course, to construe ORS 419.604(1) to be consistent with the provisions of PECBA or to obviate the problem by determining that, in situations in which juvenile counselors are members of a bargaining unit, ORS 419.604(1) is repealed by implication and simply does not apply. There is merit in petitioner's contention that juvenile court judges cannot both exercise the full authority granted by ORS 419.604(1) *and* be subject to PECBA, and I find the majority's solution to the question unconvincing.[3]

### Separation of Powers

Assuming, but by no means conceding, that the majority's statutory analysis is correct, the constitutional question lying at the heart of this controversy remains. Or Const, Art VII, § 1 (as amended) provides, in part:

> "The judicial power of the state shall be vested in one supreme court and in such other courts as may from time to time be created by law. * * *"

Or Const, Art III, § 1 provides:

> "The powers of the Government shall be divided into three seperate *[sic]* departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

The limits of legislative authority are reached when legislative action unduly burdens or unduly interferes with the judicial department in the exercise of its judicial functions. *Ramstead v. Morgan,* 219 Or 383, 399, 347 P2d 594 (1959).

---

[3] The precise character of the majority's "solution" is rather elusive. The majority asserts that

> "* * * [t]he stated authority over employment and employment conditions that various statutes confer on various public employers who are clearly subject to PECBA is as broad a the authority ORS 419.604(1) gives juvenile court judges." 61 Or App at 314.

That does *not* say that the provisions of ORS 419.604(1) and PECBA are *consistent* but only that PECBA controls.

The juvenile court exists pursuant to Or Const, Art VII, § 1 (as amended). ORS 419.474 provides:

"(1)  The juvenile court is a court of record and exercises jurisdiction as a court of general and equitable jurisdiction and not as a court of limited or inferior jurisdiction. It is called 'The _____ Court of _____ County, Juvenile Department.'

"(2)  The provisions of ORS 419.472 to 419.597, 419.800 to 419.840 shall be liberally construed to the end that a child coming within the jurisdiction of the court may receive such care, guidance and control, preferably in his own home, as will lead to the child's welfare and the best interest of the public, and that when a child is removed from the control of his parents the court may secure for him care that best meets the needs of the child."

ORS 419.476 describes those cases in which the juvenile court has exclusive original jurisdiction.[4] ORS 419.608 provides:

"The director of a juvenile department or one of the counselors shall:

"(1)  Make or cause to be made an investigation of every child brought before the court and report fully thereon to the court.

---

[4] ORS 419.476(1) provides:

"The juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"(a)  Who has committed an act which is a violation, or which if done by an adult would constitute a violation, of a law or ordinance of the United States or a state, county or city; or

"(b)  Who is beyond the control of his parents, guardian or other person having his custody; or

"(c)  Whose behavior, condition or circumstances are such as to endanger his own welfare or the welfare of others; or

"(d)  Who is dependent for care and support on a public or private child-caring agency that needs the services of the court in planning for his best interests; or

"(e)  Either his parents or any other person having his custody have abandoned him, failed to provide him with the support or education required by law, subjected him to cruelty or depravity or to unexplained physical injury or failed to provide him with the care, guidance and protection necessary for his physical, mental or emotional well-being; or

"(f)  Who has run away from his home; or

"(g)  Who has filed a petition for emancipation pursuant to ORS 109.550 to 109.565, 419.710, 482.270, 482,905 and this section."

"(2) Be present in court to represent the interests of the child when the case is heard.

"(3) *Furnish such information and assistance as the court requires.*

"(4) Take charge of any child before and after the hearing *as may be directed by the court.*" (Emphasis supplied.)

ERB found, *inter alia,* that:

"* * * Juvenile counselors are paid from county funds and work under the supervision and direction of the juvenile judge. [They] perform social casework in the investigation, counseling, adjustment, rehabilitation and guidance of children, who for various reasons, have been placed under the jurisdiction of the juvenile judge. * * *"

In my opinion, it is beyond dispute that the work of the juvenile counselors and the court's direction of that work are integral to the juvenile court's exercise of its judicial function. The majority concedes as much, albeit for the sake of argument only. When the authority of the juvenile court to direct the work of the counselors and to define their responsibilities more specifically, *see* ORS 419.608(3) and (4), as the need arises is limited, the exercise of the judicial function is burdened. Where, as here, the official charged with executing the judicial function is required by an administrative agency pursuant to PECBA to *negotiate,* among other things, the manner in which the judicial function is exercised, the judiciary is unconstitutionally interfered with by the legislature, *regardless* of the outcome of the negotiations, because under such circumstances the judiciary no longer functions as an independent department of government.

The majority admits, and I agree, that it is "axiomatic" that the requirement that petitioner bargain in good faith limits his decision-making authority over the terms and conditions of employment (and, therefore, over the exercise of the judicial function) and that other PECBA requirements also limit that authority. Notwithstanding these consequences and the undeniably close connection between performance of the duties of the counselors and the execution of the judicial functions of the court, the majority concludes, without analysis or explanation, that

the ERB requirements do not unduly interfere with the court's judicial functions and are not "facially inconsistent" with the court's ability "to exercise necessary authority over the counselor's performance." I cannot agree. The requirements constitute a "serious incursion into the area of judicial functioning" and, therefore, violate the principle of separation of powers. *See Ramstead v. Morgan, supra,* 219 Or at 400.

The application of PECBA to petitioner also unduly burdens the inherent power of the judicial department to do those things necessary for the effective performance of the judicial function. The doctrine of inherent power for the judicary was recognized in *Ortwein v. Schwab,* 262 Or 375, 385, 498 P2d 757 (1972), *aff'd* 410 US 656, 93 S Ct 1172, 35 L Ed 2d 572 (1973). The doctrine is the source of the power to do those things *necessary* to exercise that function for which the legislature has not provided, and in "rare instances, to act contrary to the dictates of the legislative branch." *Ortwein v. Schwab, supra.* The power has been held to include the authority to employ necessary personnel, to fix the salary of such personnel and to require appropriation and payment therefor. *See State ex rel Weinstein v. St. Louis County,* 451 SW2d 99 (Mo 1970); *Commonwealth ex rel Carroll v. Tate,* 442 Pa 45, 274 A2d 193 (1971); *Noble County Council v. State ex rel Fifer,* 234 Ind 172, 125 NE2d 709 (1955). This inherent power necessarily includes authority to supervise court personnel.

The majority holds that the PECBA requirements, as applied by ERB, that petitioner bargain in good faith and that he not take any unilateral action to establish "terms and conditions of employment for [the counselors] at variance with the terms" of the applicable collective bargaining agreement do not violate the separation-of-powers doctrine. Although the effect of that holding on the doctrine of inherent powers is unclear to me, it appears that petitioner would be required to negotiate before exercising his inherent power if the exercise would affect terms and conditions of employment and could not "unilaterally" exercise that power to reach a result inconsistent with the terms of the applicable bargaining agreement. Presumably, the exercise of the power would and constitutionally could be so restricted notwithstanding that the "unilateral"

exercise would otherwise be proper, *i.e.,* necessary to the execution of the judicial function.

Finally, I certainly do not agree that the separation-of-powers problems raised by the application to petitioner of *other* PECBA provisions, particularly those providing impasse procedures, are for the purposes of this case "abstract" and need not be addressed at this time. PECBA is a comprehensive statutory scheme. The majority holds that it applies to petitioner. "It" is the *entire* act, *including* the impasse procedures. As petitioner explains:

> "* * * If the parties fail to reach an agreement after meeting and conferring for a reasonable period, the ERB appoints a mediator. ORS 143.712(1). If the dispute has not been settled after 15 days of mediation, any party can initiate and compel factfinding. ORS 143.712(2)(b). If factfinding fails, the employee unit may strike 30 days after the publication of the factfinder's recommendation unless the strike creates a clear and present danger to the welfare of the public, as would almost certainly be the case were juvenile court employees to strike, the public employer concerned may petition the circuit court for relief, which must include an order that the labor dispute be submitted to final and binding arbitration. ORS 243.726(3). * * *"

Although it is true that none of these provisions have been applied to petitioner and the representative of the juvenile counselors and there are no particular "results" of such an application to measure against the constitutional standard, as I read the majority's opinion the provisions *are presently applicable.* Furthermore, ORS 243.672(1)(f) provides that it is an unfair labor practice to "refuse or fail to comply with any provision of ORS 243.650 to 243.782." In my opinion, the mediation and arbitration requirements of PECBA if applied to petitioner would constitute an impermissible encroachment into the judicial domain for the same reasons that the negotiating requirement does. As stated above, there is no question that the work of the counselors is integral to the judicial work of the court. Under PECBA, petitioner's decision-making authority with respect to the terms and conditions of the counselor's employment and their supervision is shared with the union and in the case of impasse is, in effect, taken over by an arbitrator. There would seem to be no workable method for determining beforehand that certain matters are non-negotiable and

non-arbitrable on the grounds that, in order to maintain the independence and integrity of the judiciary, petitioner *alone* must *ultimately* determine those matters. Under PECBA, petitioner may be compelled to enter a binding agreement governing matters that necessarily involve the exercise of the judicial function, thus limiting, by the fact of its existence, his ability the exercise the inherent power of the court. The conclusion is inescapable that the application of PECBA to petitioner and the counselors violates the principle of separation of powers.

It would be unreasonable and illogical to acknowledge, on the one hand, that our constitution authorizes the judiciary to exercise awesome powers over the life, liberty and property of every one of us and at the same time to deny the judges the authority to determine independently the basic needs of their courts and day-to-day responsibilities of support personnel involved in the judicial work of the courts. If we accept the proposition that the judiciary is the ultimate protector of all our rights under the law and recognize its duty to act fairly and impartially, it follows that the judiciary must retain complete independence in its relationships with its employes.

A circuit court judge, on *any* given day, is called on to sentence persons to state institutions — up to a period of a lifetime, terminate marriages, determine custody of children, resolve title to real property, decide what is to become of one's life savings and property upon death, administer the business of those who are either incompetent or infirm, commit those who are found to be mentally ill, chart the future of dependent or delinquent juveniles, grant adoptions and preside over the ever-expanding number of trials being filed in the state's court of general jurisdiction. The effective discharge of those duties demands a very special kind of independence, and I believe it is dead wrong for us to conclude that a person charged with such awesome responsibilities is guilty of unlawful labor practices should he decide not to bargain with someone who seeks to unionize the court's employes.

By determining that PECBA applies to the circuit court judges of this state and at the same time failing to address the constitutional problems raised by that decision,

the majority has allowed the camel to get considerably more than his nose into the tent. I am convinced that, once inside, the animal will be reluctant to leave and that controlling him will become increasingly difficult.

Buttler and Warden, JJ, and Thornton, SJ, join in this dissent.